————o————

FELICITA LOTTMAN, Respondent *vs.* GEORGE I. BARNETT, Appellant.

| | |
|---|---|
| 62 | 159 |
| 103 | 491 |
| 62 | 159 |
| 57a | 391 |
| 58a | 634 |
| 62 | 159 |
| 71a | 245 |
| 62 | 159 |
| 74a | 146 |
| 62 | 159 |
| 81a | 558 |
| 62 | 159 |
| 91a | 656 |
| 91a | 658 |

1. *Damages—Falling of building—Superintendent, responsibility of for acts of another done with his approval—Misfeasance and non-feasance—Amended petition—Change in cause of action—Statute of limitations.*—One having the general charge and superintendence of the construction of a building was held to be responsible for the killing of a workman caused by the falling of a wall which resulted from the giving way of supports on which it rested, under the working of a jackscrew, although the appliance was put to work under the immediate direction of another person employed by the owner of the building, and while the architect was absent, where it appeared that the manager of the jackscrew was employed under the advice of the architect, and subject to his direction, and that he knew and approved of the method adopted for effecting the raising. Whether the wall fell because the plan for raising it was a bad one, or because the supports were inadequate, in either case the disaster was attributable to positive misfeasance for negligence in a work which the architect undertook, but in which he failed to exhibit the care and skill which the law imposed upon him. For such negligence he was responsible not merely to his employer, but to those injured in consequence, and the question whether, and in what respect, he was guilty of negligence, was one for the jury under appropriate instructions. The doctrine that agents are not responsible to third persons for mere non-feasance, has no application to such a case.

In such suit, where the original petition joined the architect and the owner as defendants, charging them with carelessness and negligence in the construction of the building, and the suit was subsequently dismissed as to the owners, and an amended petition was filed alleging that the remaining defendant (the architect) had the entire superintendence and control of the building, and that the disaster was caused by his carelessness as such architect, in the construction of the building, it was held that the amendment did not change plaintiff's cause of action so as to affect the running of the statute of limitations.

2. *Practice, civil— Weight of evidence.*—In civil actions at law the Supreme Court will not consider questions of conflicting evidence.

3. *Practice, civil—Amendments—Statute of limitations.*—Amendments are allowed expressly to save a cause from the statute of limitations, and courts have been liberal in allowing them when the cause of action is not totally different.

*Appeal from St. Louis Circuit Court.*

*Thomas T. Gantt, with S. T. Glover,* for Appellant.

I. The demurrer to the plea of limitations was improperly sustained. The amended petition set up a new cause of action founded upon a different section of the statute from that on which the original petition was based, and requiring different evidence in its support. The charge, the evidence and the penalty were different in each. (Buel vs. St. Louis Transfer Co., 45 Mo., 562–63; Dudley vs. Price, 10 B. Mon., 88; Hyatt vs. Bank of Ky., 8 Bush., 192–200; Roe vs. Doe, 30 Ga., 873–875; King and Wife vs. Avery, 37 Ala., 169; Christman vs. Mitchell, 3 Ired. Ch., 543; Holman vs. Trout, 1 McLean, 410.)

II. The instructions given by the court industriously ignored the difference between the liability of a contractor to those with whom he has contracted, and to those between whom and himself there is no such connection. (Shearm. & Redf. Negl., §§ 111–115; Brown vs. Lent, 20 Vt., 529; Henshaw vs. Noble, 7 Ohio St., 226; Rapson vs. Cubitt, 9 Mees. & Wels., 710 [Eng. Exch. Rep).

III. The instructions given by the court erroneously invited the jury to treat what was at most a secondary cause, as a "direct and immediate cause" of the catastrophe; and this error was committed not only against the weight of, but in violent contradiction to, all the evidence in the cause, and this is error. (Harper vs. Ind. & St. L. R. R. Co., 44 Mo., 488; Franz vs. Hilterbrand, 45 Mo., 123; Dedo vs. White, 50 Mo., 241.)

*Stewart & Wieling,* for Respondent.

In the amended petition the same cause of action, in substance, is again stated in a manner more in accordance with the facts, and it was properly allowed, (Thompson vs. Mosely, 29 Mo., 477) and related back to the original petition. (Buel vs. Transfer Co., 45 Mo., 562.)

The gist of the action was the killing the plaintiff's husband by the act or negligence of the defendant, and the same

Lottman v. Barnett.

charge against the defendant is contained in both the original and amended petition. In the latter the means of the killing and the immediate connection of the defendant therewith, are more specifically stated. (Railroad Co. v. Hendricks, 41 Ind., 48; Thompson vs. Mosely, 29 Mo. 477; Buel vs. Transfer Co., 45 Mo., 562; Boys vs. Anall, 5 Bing., 333; LeBanco vs. Hamburger, 2 H. & C., 330; Carne vs. Malin, 6 Eng. L. & E., 568; Davenport vs. Holland, 2 Cush., 1; Tobias vs. Harland, 1 Wend., 93; Davis vs. Hill, 41 N. H., 329; Ten Eyck vs. Canal Co., 4 Har. [N. J.] 5; Ward vs. Pine, 50 Mo., 38; Mann vs. Schroer, 50 Mo., 306; Harkness vs. Julian, 53 Mo., 238; Bearecroft vs. The Hundred, S. & C., 3 Lev., 347; Marlborough vs. Wildman, 2 Strau., 890; Lane vs. R. R. Co., 5 Jones [N. C. Law], 25; N. A. & S. R. R. Co. vs. Laiman, 8 Ind.. 212; Sherman vs. Bridge Co., 11 Mass., 338; Horton vs. Inhabitants, &c., 1 Cromp. & Mees., 772; Tayon vs. Ladew, 33 Mo., 205.)

The defendant is charged with having caused the injury by his negligence, unskillfulness and carelessness. This is the language used in the instruction in Harriman vs. Stowe, and it imputes positive misfeasance. (Bouv. Law Dic., def. Misfeasance; Whart. Law Dic., def. Misfeasance; Blythe vs. Waterworks, 39 Eng. L. &. Eq., 506–8; New World vs. King, 16 How. [U. S.], 469; Grant vs. Mosely, 29 Ala.. 302.)

*J. A. Beal*, for Respondent.

The builder in law is bound to provide proper materials and safe construction, so as not to expose employees to dangers and injuries. (Connor vs. Chicago, R. I. & P. R. R. Co., 59 Mo., 285; Horner, Adm'r, vs. Nicholson, 56 Mo., 220; Garetzen vs. Pac. R. R., 50 Mo., 104; 36 Mo., 13; Harriman vs. Stowe, 57 Mo., 93; Shearm. & Redf. Negl., §§ 89, 92, 93; 10 Gray, 274; Cozzen vs. Taylor, 8 N. Y. 175; Keegan vs. Western R. Co., 10 Jur. [N. S.], 1235; Davis vs. England, 41 Barb., 366; Conolly vs. Poillon, 59 Penn. St., 239.)

Defendant had the control, direction or advice in raising of the columns, and was therefore responsible to plaintiff for

the death of her husband. (Horner, Adm'r, vs. Nicholson, 56 Mo., 220; Shearm. & Redf. Negl., § 73 and notes.)

Defendant, as architect, is liable for negligence in performance of his duties. (Harriman vs. Stowe, *supra*.)

NAPTON, Judge, delivered the opinion of the court.

At the April term, 1870, of the St. Louis circuit court, a petition was filed by the plaintiff against eight defendants, of whom the present defendant was one, stating that she was the widow of F. A. Lottman, and that her husband was a carpenter, engaged in the construction of the building on the corner of Fifth and Olive, the property of the defendants, and while so engaged, was killed by the falling of the southern portion of said building; that her husband's death was occasioned by the carelessness, negligence and default of defendants and their servants in the construction of said building, and a judgment is asked for $5,000 under the 3d section of the act concerning damages.

In April, 1872, the plaintiff dismissed as to all the defendants except Barnett, and by leave filed an amended petition. This petition contained the same allegation as the first, as to the death of plaintiff's husband, but alleged that defendant, at the time of the accident, and for a long time previous thereto, was the superintending architect in charge of said building, and as such, had been entrusted with the business of constructing and completing the same, and had the entire superintendence and management of the work and materials on and about the same, and that the falling of the southern portion of said building (by which plaintiff's husband was killed) was caused by the carelessness, negligence and unskillfulness of said defendant, as such architect, in the construction of said building, and in his direction and management of the work on the same, and his use of improper and unsafe materials therefor.

The answer denied these allegations, and pleaded the statute of limitations of one year as a bar to this last petition. A demurrer was filed to the last part of the answer, which was sustained.

The bill of exceptions contains the facts agreed on at the trial. The killing of plaintiff's husband, as stated in the complaint, was admitted. Evidence was given by the plaintiff tending to show that the iron tubular girders, resting on cast iron pillars, which supported the walls of the building which fell, were constructed in a manner less strong and less calculated to support weight than had been, prior to that time, in use in England, and since that time, in St. Louis. It was admitted that the proprietors had employed defendant to design the building, and as a general superintendent in its construction.

The building fell at or before 8 o'clook in the morning of November 19th, 1869. An attempt had been made that morning to raise the western pillar, supporting the girder on which the wall rested. The most eastern pillar supporting the girder on which the wall rested, had been raised successfully on the 17th of November. Defendant was not at the building on the morning when it fell, but was still at his house and at breakfast when it occurred. The 18th was Thanksgiving day. The working of the jackscrews caused the fall of the building at that time. Plaintiff's husband was a carpenter and employed at work on the building, and with others was called down into the cellar on the morning of the 19th of November, by Bashore, who had charge of the working of the jackscrews.

There was evidence tending to show that the fall of the building was due to the imperfect construction of the girders employed in building it. There was evidence tending to show that the immediate cause of the fall was the working of the jackscrew ; and that but for the working of the jackscrew the building would not have fallen at all. There was evidence to show that the raising of the building by the means employed was a hazardous job, but might have been safely accomplished if those in charge of it had taken due precautions; that the fall of the building was caused by injudicious working of the jackscrews, and that Bashore was negligent and remiss on that occasion.

There was also evidence tending to show that the tubular iron girders and the columns used in the construction of the building, were constructed upon the plan approved and adopted by defendant, as the architect and superintendent of the building, and that the girders were not properly constructed, and were not sufficiently strong for the purposes for which they were employed; that they were of cheap construction.

It was admitted that the columns upon which the broken girders rested, stood upon a foundation in the lower department of the building, and extended to the second floor; that about midway the length of the columns were flanges on either side, which supported the girders of the first floor, and that the jackscrews by which it was attempted to raise this column, were applied to and underneath these flanges. The tubular iron girders were constructed of four iron plates, the width of the side plates being the depth of the girders, the upper and lower plates being placed between the side plates and riveted to them; and the lower edges of the side plates resting on the cap of the column, and the ends of two of these girders, being each about 23 feet long, resting on the cap of this column. In the attempt to raise this column by means of two jackscrews, the girders were not supported between the columns upon which they rested, and the cap of the column was broken off, the column forced up through the ends of the girders resting upon it, shearing off the rivets by which the lower plates were fastened to the side plates, and bending the lower or channel plates of both girders upwards, and in consequence the building fell. Of this, at least, there was evidence on one side, and there was also evidence to show, that after the settling of the columns, the permanence of the building was questionable, even if the attempt to raise it had not been made. There was also evidence to show that when the defendant discovered that two of the columns had settled, and the iron plates and stones upon which these columns stood were broken, he advised the raising of the settled columns, and suggested the employment of Bashore for this purpose.

There was evidence to show that defendant employed Bashore to raise these columns, and also that defendant had general charge and superintendence of the raising of these columns; that the question was pretty fully discussed in the office of defendant, between defendant and Mr. Peck, the president, and Bashore, as to the propriety of raising these columns, and as to the mode which should be adopted, and Mr. Shickle, a member of the firm which manufactured the iron material for the building, advised Barnett (defendant) against raising these columns, and that defendant consulted Mr. Shickle as to the safety of the flanges, and as to their strength, and whether he could rely upon them to raise these columns. Defendant was so well satisfied with the raising of the eastern column, that he permitted Bashore to attempt to raise the western column. Evidence was also offered that the proper means and precautions were not used by Bashore, in attempting to raise these columns.

There was evidence to show that plaintiff was afflicted with a chronic disease; that she had a son about nine years old; also to show the character and condition of her husband, who was a sober and industrious man, and provided for his family.

There was some evidence in regard to Peck and Bashore, the former having been originally an architect, and the latter an employee of Peck, and that Bashore was employed by Peck and was understood to have entire control over the matter of raising the building.

Upon this state of evidence, the court gave the following instructions to the jury:

1. "If the jury believe from the evidence that the defendant was the architect and superintendent of the building on the south east corner of Fifth and Olive streets, the fall of which caused the death of plaintiff's husband, and, as such architect and superintendent, had the general charge and direction and control of the raising of said building; and that the failure of defendant to take the proper precautions or adopt and follow the proper means and mode of raising said

building, was the direct or immediate cause of the fall of the same, which precautions and means and mode were known to the defendant, or by the exercise of reasonable care and prudence could have been known to him, then the jury are instructed to find for the plaintiff."

2. "If the jury believe from the evidence in the case that the raising of the building on the southeast corner of Fifth and Olive streets, the fall of which caused the death of plaintiff's husband, was entrusted by the owners thereof to Mr. Bashore, who, in the prosecution of said work, was not under the direction or control of the defendant; and that the failure of said Bashore to take the proper precautions, or adopt and follow the proper means and mode of doing said work, was the direct and immediate cause of the fall of said building, then the jury will return a verdict for the defendant; notwithstanding they may further believe from the evidence that said defendant was the architect and superintendent of said building."

3. "If the jury believe from the evidence in this case that the defendant was the architect and superintendent of the building on the south east corner of Fifth and Olive streets, the falling of which occasioned the death of plaintiff's husband, and as such architect and superintendent, had the charge, control and determination of the plan and construction of the iron girders and columns used in the erection of said building, and also the general charge and direction of the raising of said building; and that in an attempt to raise said building, the fall of the same was immediately and directly caused by a defect in the construction of one of said columns, or the girders resting thereon, which defect was known to the defendant, or which might, by the exercise of ordinary prudent care, have been known to him, then the plaintiff is entitled to recover in this action."

4. "If the jury believe from the evidence in this case that the defendant was the architect and superintendent of the building on the south east corner of Fifth and Olive streets, in this city, the falling of which occasioned the death of the

plaintiff's husband, and as such architect and superintendent, had charge and control and determination of the plan and construction of the iron girders and columns used in the erection of said building, and that said defendant, as architect and superintendent, and in the discharge of his duties as such, advised or directed the raising of said building, and that in the attempt to raise the same it fell, and that such fall was immediately and directly caused by a defect in the construction of one of said columns or the girders resting thereon, which defect was known to the defendant, or which might, by the exercise of ordinary and prudent care, have been known to him, then the jury will find for the plaintiff, although they may further believe from the evidence that the raising of said building was entrusted by the owner to Mr. Bashore, who, in the prosecution of said work, was not under the direction or control of the defendant."

5. "And the jury are further instructed that, although they do believe from the evidence that the defendant was the architect and superintendent of said building on the south east corner of Fifth and Olive streets, the falling of which caused the death of plaintiff's husband, and that as such he had the charge, control and determination of the plan and material or construction of said building, or of any portion thereof, which from the evidence the jury may believe to have been defective, either in the material or its construction, yet the jury cannot find for the plaintiff in this case, unless they shall find the facts as indicated either in instruction No. 1, or No. 2, or No. 4."

6. "If the jury find for the plaintiff, they will give her such damages as from all the evidence in the case they may deem fair and just, with reference to the necessary pecuniary injury to her from the death of her husband, not to exceed, however, the sum of five thousand dollars."

There was a verdict for plaintiff and judgment accordingly. To reverse this judgment the defendant makes two points; one, that the instructions were wrong, and the other, that the statute of limitation of one year barred the action.

The doctrine that agents are not responsible to third parties for mere non-feasance, is the one upon which objections to the instructions are mainly based.

It is not easy to perceive how the facts in this case, as offered on either side, would authorize any declaration to the jury on this principle. The most that could be claimed was that Bashore was the active agent of the company in occasioning the disaster, and this was fully submitted to the jury in the second instruction. The jury found that Bashore was not the person who was intrusted by the company with the exclusive management of this experiment, but that Bashore was employed under the advice of the defendant, and subject to his directions.

It is certainly not material that the application of the jackscrews to the flanges of the pillars detected their insufficiency, when both the construction of the pillars and the application of the jackscrews were directed and supervised by defendant. It is true the defendant was not present when the disaster occurred, but as the defendant was undoubtedly the architect and general superintendent, and there was evidence to show that he proposed to raise the building, and assented to or recommended the employment of Bashore, and suggested the mode of effecting the raising, it is not strange that, under the first instruction of the court, the jury found a verdict for the plaintiff, apart from all considerations of the responsibility of the defendant to his employees for mere non-feasance.

I do not see that the instructions given to the jury involve the question of the liability of an agent for omission of duty to his principal. It is conceded that, as to third persons, he incurs no such liability, but what will constitute a mere nonfeasance is not so well determined. Negligence in leaving open a trap door was not considered non-feasance by this court in Harriman vs. Stowe (57 Mo., 93). There was no pretense of non-feasance in this case, since, if Bashore was considered as defendant's agent, the attempt, by Bashore, to raise the building, was the occasion of the disaster, and if he

was not defendant's agent the insufficiency of the girders and pillars might very well account for Bashore's failure, and either was chargeable to defendant's acts as architect and superintendent of the building. This matter was left to the jury, and it was for them to consider whether Bashore adopted a bad plan, without the sanction of Barnett, to raise the building, or whether the plan of Bashore was in fact suggested by Barnett, and approved by him. And if the plan failed not because it was a bad one, but because it relied on the sufficiency of the flanges on the pillars constructed by defendant or by his direction, then the insufficiency of the flanges was in fact the immediate cause of the disaster. This insufficiency might not have been detected until the application of some test, but the application of any sufficient test establishes their insufficiency.

We see no objection to the instructions. The defendant is not attempted to be held responsible for omissions of duty to his employers. He is held responsible only for positive misfeasances, for negligences in a work which he undertook and carried out, but in which he failed to exhibit the skill and care, which the law imposed on him. For this want of skill and care—in other words, for negligence—he is responsible, not merely to his employer, but to persons injured by reason of his acts. The question whether the fall of the building was owing to injudicious appliances used by Bashore, or to imperfect and insecure construction by defendant, was fairly left to the jury by the instructions, and the jury found against the defendant, and there was ample evidence to support this finding. There was at least contradictory evidence on this point, and this court, upon contradictory evidence, would not interfere with the verdict. The bill of exceptions concedes that evidence was submitted to show that Bashore's plan was submitted to defendant, and that he approved it, and that it necessarily assumed the sufficiency of the flanges on the columns to sustain the weight imposed on them by the jackscrews, of the insufficiency of which the defendant was advised by the makers of the columns. The experiment was, however, insisted on by the defendant, as the jury have found, and as

the evidence clearly shows. There was evidence also to show that the defendant had no concern in this attempt of Bashore to raise the building, but this, under the second instruction given by the court, the jury have disregarded.

The only other point insisted on, is that the amendment set up a new cause of action, founded on a different section of the statute; but this is surely a mistake. Both causes of action, or rather the only cause of action asserted either in the original petition or in the amendment, was based on the 3d section of our statute concerning damages. The cases of Buel vs. Transfer Co. (45 Mo., 562), and Thompson vs. Mosely (29 Mo., 477) are decisions on this question. The defendant was one of eight or nine defendants in the first complaint, and his liability was averred in that petition, but in the amended petition his co-defendants are omitted, and the recovery is sought simply from the defendant, as a servant in the corporation or association, who, as architect and superintendent, was alleged to be responsible. All the parties originally sued were, in fact, liable, and the case might well have been tried on the original petition.

The defendant was liable on the first petition, as he was held to be on the second. The gist of the action was the same in both, to-wit: the death of plaintiff's husband, and by the negligence of the defendant, either as proprietor or architect and superintendent of the building. It would require precisely the same evidence to support the action after the amendment as before, nor would it be an objection, that the proofs might not have sustained the original petition, for the object of an amendment is to obviate this variance.

Amendments are allowed expressly to save the cause from the statute of limitation, and courts have been liberal in allowing them, when the cause of action is not totally different. (Maddok vs. Hammett, 7 T. R. 55.)

The judgment is affirmed. Judges Vories and Hough absent; the other judges concur.