BUNTIN *v.* CHICAGO, R. I. & P. RY. CO.

(*Circuit Court, W. D. Missouri.* March 4, 1890.)

1. PLEADING—AMENDMENT—SUBSTITUTION—LIMITATION.
    In an action against a railroad company for overflowing plaintiff's land, the original petition alleged solely that the overflow was due to the building of an embankment across a certain stream; a subsequent amended petition alleged that by reason of the embankment the stream was diverted from its course, and was then turned back into the channel at a point where defendant built a bridge in such a manner as to obstruct the flow of the stream and to collect drift, so that plaintiff's land was overflowed thereby. *Held,* that, as to the new issue presented, the amendment does not relate back to the original petition so as to stop the running of the statute of limitations when that was filed, but the statute runs till the filing of the amended petition.

2. LIMITATION OF ACTIONS—ACCRUAL OF ACTION—OBSTRUCTION OF STREAM.
    Where such amended petition was filed more than 11 years after the first overflow occurred and demonstrated the negligent construction of the bridge as to plaintiff's land, the cause of action stated therein was barred by limitation.

At Law. On demurrer to plaintiff's evidence.
*J. W. Boyd* and *Greene & Burnes,* for plaintiff.
*McDougal & Robinson* and *E. H. Stiles,* for defendant.

PHILIPS, J., (*orally.*)  I have given this case such consideration as I am able, on the instant, and will briefly state the pleadings and law applicable to the facts developed, and my conclusions therefrom.   The original petition in this case was filed on the 16th day of May, 1883, and there is no better way to ascertain or understand what was the cause of action alleged there than to read the petition itself.  After setting out the corporate existence of the defendant and the ownership of the property by plaintiff, it charged that "in the month of May, 1873, the Chicago and Southwestern Railway Company, a corporation organized and incorporated under and by virtue of the laws of the state of Missouri, constructed a line of railroad from the town of Winthrop, in said county of Buchanan, in a northwesterly direction through said county, which said line of railroad crossed said stream at a point at or near the south-west corner of said section eleven, (11,) and in so constructing said railroad across said stream the said Chicago and Southwestern Railway Company constructed in and across the channel of said stream at said point an embankment of earth, whereby the waters of said stream were turned and twisted from their said course so as to flow upon and over the said lands of plaintiff."  Then it sets out the lease of the line of the railway by the Chicago, Rock Island & Pacific Railway Company, and states that the parties, (the same as aforesaid,) "having full knowledge that said stream had by said embankment been turned and diverted from its course as aforesaid, have at all times kept, maintained, and from time to time repaired said embankment, by reason whereof the said waters were thereby diverted, and turned upon said land of plaintiff, as aforesaid, and have continued to overflow said lands, whereby all said lands have at all times hitherto been rendered unfit for cultivation, and almost entirely worthless to plaintiff."  The charge in the original petition is that the damage plaintiff claims, resulted from the construction of this embankment, filling up 70 feet of the natural channel, so as to divert the natural course of the stream.  In the original petition there is no word about the bridge.  No allegation was made, even, that there was any misconduct or any negligent act on the part of the defendant in the matter of the construction of the bridge. It does not appear there was a bridge built there, in fact.

Now, on the 8th day of April, 1889, in order to comply with what was the ruling of Judge BREWER at that time, following the decision in *Offield* v. *Railroad Co.,* 22 Mo. App. 607, (which is in effect that each separate overflow constituted a separate and independent cause of action,) the plaintiff took leave to amend for the purpose of putting these different overflows in separate counts of the petition.  Of course, that permission to amend was no limitation upon plaintiff's right to make further and pertinent allegations, or to supplement his cause of action.  This amended petition sets out that the Chicago & Southwestern Railway Company, in June, 1872, constructed said line of railroad across said stream.  "That, in constructing said line of railroad across said stream, the Chicago and Southwestern Railway Company carelessly and unskillfully constructed in and across the channel of said stream, at said point, as and for it

road-bed, an embankment of earth and dirt, whereby the waters of said stream were turned and diverted from their natural course, and caused to flow in a westerly direction for the distance of about fifty yards, and at and from which last-mentioned point the waters of said stream were caused, by the said Chicago and Southwestern Railway Company, to turn and flow in a southerly direction, back into the original channel of said stream. That at the said point where said stream was turned in a southerly direction, as aforesaid, the said Chicago and Southwestern Railway Company carelessly, negligently, and unskillfully constructed a bridge and trestle-work across said stream about the month of June in the year 1872, which said bridge and trestle-work were carelessly, negligently, and unskillfully so constructed as to be too low, too narrow, and too short to permit the waters of said stream to flow thereunder; and said railway company carelessly, negligently, and unskillfully, and at such time, placed the piling of said bridge so close together, and in and near the middle of the channel of said stream, as to obstruct the flow of the waters of said stream. That by the careless, negligent, and unskillful manner in which said bridge was built and constructed, as aforesaid, and by and in consequence of the defects and deficiencies, aforesaid, of said bridge and trestle-work, said bridge and trestle-work at all times obstructed the flow of said stream, and was at all times insufficient to permit the waters of said stream to flow thereunder." Then it sets out how defendant in this case, by acts of consolidation, succeeded to the franchises and rights of the original corporation. Then it proceeds to state that defendant, at all times herein mentioned, had full knowledge of all the facts stated in this petition. "That from and after the time, aforesaid, when said railroad was completed, and when the Chicago, Rock Island and Pacific Railroad Company, and defendant herein, took possession of said railroad, about June, 1872, the defendant has at all times carelessly, negligently, and continuously caused and permitted drift-wood, dirt, *debris*, brush, logs, mud, stones, and earth to accumulate under and against said trestle-work and bridge, in the bed and channel of said stream, until the time when said railroad companies were consolidated. That, from and after the time of said consolidation, to-wit, June 2, 1880, the defendant herein has at all times carelessly, negligently, and continuously caused, allowed, and permitted drift-wood, *debris*, brush, logs, earth, mud, and stones to accumulate under and against said trestle-work and bridge, in the bed and channel of said stream, until the time this suit was instituted, when the space under said trestle-work and bridge was by the means aforesaid filled up, so that the waters of said stream were prevented from flowing under said trestle-work, and were diverted from their natural channel." Then that, in consequence of said trestle-work, bridge, and obstructions in the channel, waters were, in the year 1879, caused to flow over the land of the plaintiff, and the damage ensued. So that it is too palpable for controversy that the cause of action set up in this amended petition grows out of the construction of the bridge, and the imputed misconduct of the defendant

in permitting the *debris*, mud, etc., to accumulate at the bridge, so as to obstruct the free flow of the water, causing it to back up and spread out over plaintiff's lands.

The question is, when did the statute of limitation cease to run as against this cause of action? The contention of the plaintiff is that the amended petition must have relation back to the time of the institution of the original suit, and the statute of limitations was intercepted at that time. On the other hand, it is contended that the statute of limitations did not stop running until the filing of the amended petition. There have been various decisions by the supreme court of this state in respect to the right of amendment, discussing and defining the difference between amendment and substitution; whether it was a continuation of the same cause of action, by merely supplementing and presenting the same cause of action in a different form of statement, or whether it was a substitution of another cause of action. Of course, courts and lawyers understand by the cause of action that it is that act or thing which gives a party the right to sue; the act or wrong of the defendant towards the plaintiff which causes a grievance for which the law gives a remedy. The cause of action, in other words, is the act done by a defendant, by which the plaintiff is injured, and for which the law undertakes to give him redress. Attention is called by counsel to the case of *Lottman* v. *Barnett*, 62 Mo. 159, which can be better understood by the subsequent review and application of that case in *Lumpkin* v. *Collier*, 69 Mo. 170. The defendant in the first case was sued, in connection with others, for negligently constructing the scaffolding on which the plaintiff, a laborer, was at work, and from which he was precipitated, claiming his injury resulted from its improper construction. The petition was amended by dropping the co-defendant, and leaving the cause of action against the one defendant; and the amended petition alleged that he was the superintendent and architect in charge of the general erection or construction of the scaffolding, and was responsible therefor. In *Lumpkin* v. *Collier*, *supra*, the court commented upon this as follows:

"There is no case in our reports which sanctions such an amendment as was made in this. In *Lottman* v. *Barnett*, 62 Mo. 159, the original petition was filed by plaintiff against eight defendants, of whom Barnett was one, stating that her husband was a carpenter engaged in the construction of a building, the property of defendants, and while so engaged was killed by the falling of the southern portion of said building, and that her husband's death was occasioned by carelessness, etc., of defendants and their servants in the construction of the building. Subsequently, she dismissed as to all the defendants except Barnett, and, by leave, filed an amended petition, containing the same allegations as the original, but alleging that defendant at the time of the accident, and for a long time previous, was the superintending architect in charge of said building, and was intrusted, as such, with the construction and completion of the same, having the entire superintendence and management of the work and materials, and that the falling of the southern portion of the building was caused by his carelessness and negligence. NAPTON, J., who delivered the opinion of the court, observed that, 'both causes of action, or, rather, the only cause of action asserted, either in the original petition or

the amendment, was based upon the third section of our statute concerning damages.' Again: 'All the parties originally sued were, in fact, liable, *and the case might well have been tried on the original petition.*' The defendant was liable on the first petition, as he was held to be on the second. The gist of the action was the same in both, to-wit, the death of plaintiff's husband by the negligence of the defendant, either as proprietor or architect and superintendent of the building. It would require precisely the same evidence to support the action after the amendment as before." ·

The court further observed:

"I have italicized those portions of the opinion which clearly indicate the ground upon which that decision was based. That case 'might have been tried on the original petition;' this could not have been tried on the original petition. In that, the 'gist of the action was the same in both;' in this, while some of the facts are common both to the case asserted in the original and that stated in the amended petition, the cause of action in the one is entirely different in its character from that contained in the other. In *Lottman* v. *Barnett* 'it required precisely the same evidence to support the action after the amendment as before.' In this, the case could not have been made out on the original petition without proof of the bond, while that stated in the amended petition might have been established if there had never been an indemnity bond given."

Again, in the later case of *Scovill* v. *Glasner*, 79 Mo. 449, written by myself while on the supreme court commission, the authorities are reviewed:

"The first question presented by this record is the right of plaintiff to file the amended petition. ·It certainly carries the right of amendment to the extremest verge, to uphold the amendment in this case. It cannot, as plaintiff's counsel contends, be maintained as a rule that, because the original petition was an action *ex delicto,* any other cause of action in tort may be substituted by amended petition. If it can, an action for assault and battery might be substituted for trespass in forcibly taking plaintiff's horse; an action for for slander might be substituted .for a *crim. con.* action. Nor is it to be maintained that, because two actions might be joined in separate counts in the same petition, therefore the one may be substituted for the other by way of amendment. One count might be for trespass to the freehold; another for assault and battery. The discussion of this question in *Lumpkin* v. *Collier*, 69 Mo. 170, shows that the right of amendment does not necessarily obtain because the two cases stated belong to the same general classifications known to the common law and the Code. One of the tests there applied is that the evidence which would support the one would not the other. 'A defendant served with process on one cause of action, suffering a default, might be confronted with a judgment on a cause of action totally different from that which he was summoned to answer.' The least that could be exacted in the exercise of the right of amendment is that the amended petition should embrace the original cause sued on, with a like rule in respect of the measure of damages."

In *Newton* v. *Allis*, 12 Wis. 378, an action to recover damages for flowing the plaintiff's land, the plaintiff was not permitted to amend so as to charge the defendant, under the statute, for appropriating the land for his own use. It was a substitution, and so is this. While the courts, in observing the spirit of the Code, should be liberal in allowing amend-

ments, yet it should be in furtherance of justice, and not beget laxity in pleading, by encouraging attorneys, without a consideration of what they want, and how to sue for it, to state anything as a case, on the reliance that afterwards, when they find out what they want, they may substitute a new cause of action, and call it an amended petition. We do not say that if this action had stood as it was originally instituted in this court, attributing the injuries to the negligent acts of this defendant in filling up and obstructing the original channel of the stream, by reason of which the water was diverted and overran this land, he could support the cause of action by showing that the injury resulted from the negligent construction of the bridge, and the negligent acts of the defendent in permitting the *debris* to accumulate at the bridge, by reason of which the water had dammed up, and its reflux motion caused it to overflow the banks. I think that would have been a variance.

Waiving the question as to whether or not the amended petition be the substitution of a new cause of action, and conceding that the plaintiff had the right to file the amended petition, the question remains, is not the new issue as to the new facts first brought into the controversy subject to the plea of the statute of limitations? It is true that courts will allow amendments with liberality, in order to prevent the operation of the statute of limitations; but this indulgence cannot go to the extent, in order to avoid the statute, of permitting the plaintiff to substitute an entirely new ground of recovery, requiring entirely different evidence, so as to recover thereon, when he could not have done so if this amended petition were an original petition. Unquestionably, had this amended petition been filed, at the time it was, as an original petition, it would have been subject to demurrer, for the reason that the cause of action was barred by the statute of limitation. In *Buel* v. *Transfer Co.*, 45 Mo. 562, the court discusses the effect of an amendment on the running of the statute of limitations. The court says:

"This is an action brought under the statute for the recovery of damages. * * * It was originally instituted by the plaintiff, Ruth Buel, as the mother of a minor child who is alleged to have been fatally injured through the carelessness of one of the defendant's servants. Subsequently to the filing of the petition, and eighteen months after the accruing of the cause of action, the petition was amended so as to introduce Samuel F. Buel, the father of the deceased child, as a co-plaintiff in the action. By the statute, * * * this class of actions is barred in one year from the time they accrue. Unless the amendment, therefore, has relation to the commencement of the suit, and takes effect, as regards the limitation, from that date, then the action is clearly barred; for it cannot be sustained as to one of the plaintiffs, and not as to the other. If either is barred, both are. * * * Whether an amendment, by relation, takes effect from the commencement of the suit, or only from the time of its filing, depends on circumstances. The rule is this: Where the amendment sets up no new matter or claim, but is a mere variation of the allegations affecting a demand already in issue, then the amendment relates to the commencement of the suit, and the running of the statute is arrested at that point; but where the amendment introduces a new claim, not before asserted, then it is not treated as relating to the commencement of the suit, but as equivalent to a fresh suit upon a new cause of action; the running of the statute continuing down to the time the amendment is filed."

This clearly shows the distinction. If the party introduces a new claim, it presents a new issue; and, as that is the first time the defendant has had an opportunity to interpose the plea of the bar, it must follow that his right cannot be taken away by the doctrine of relation, which goes back to the first act,—the filing of the original petition; otherwise, the party might perpetuate indefinitely a cause of action by suing for one thing, and, after the lapse of the statutory period of limitation, go back to the cause of action already barred, and revive it under the disguise of an amendment.

We are now brought to the question as to when the cause of action before the court accrued. There is authority of high character for the proposition that the railroad bridge constructed over the creek in question was essentially a permanent structure, not liable to change. As such, the statute of limitation would begin to run against the cause of action from the time of the first overflow occasioning any damage to the plaintiff, for which the plaintiff had a cause of action, in which he could have recovered as for a permanent injury to the freehold, because it was then made apparent that the property was liable to perpetual injury. *Powers* v. *Council Bluffs*, 45 Iowa, 652; *Stodghill* v. *Railroad Co.*, 53 Iowa, 341, 5 N. W. Rep. 495; *Troy* v. *Railroad Co.*, 23 N. H. 83; *James* v. *City of Kansas*, 83 Mo. 567; *Bird* v. *Railroad Co.*, 30 Mo. App. 365. But waiving this proposition, and treating the wrong done as not involving the entire destruction of the estate or its beneficial use, and conceding that it may be apportioned from time to time, so that separate actions may be brought to recover for each overflow, still the right of entry or action for such overflow would be barred after the lapse of 10 years from the time the plaintiff's cause of action first originated. Authorities *supra*. The uncontradicted evidence now before the jury is that from the time this bridge was constructed, in 1872, there was periodically such interference therefrom with the outflow of the water as to cause it to back and overflow. It overflowed in 1873 and 1874; and several of the witnesses state there was an accumulation of logs, brush, and other material at this bridge, which continually obstructed the outflow of the water through the bridge; and the plaintiff himself testified that in 1877 the water, from this cause, did overflow the banks and run over his land, and that it had annually so occurred up to 1883, when this suit was originally instituted; so that as early as 1877, at least, the fact was demonstrated that the bridge as to him was in the nature of a nuisance, and that injury was liable to come to him therefrom at any time. Even if no crop was destroyed in 1877, he could have maintained an action for the overflow, and recovered at least nominal damages. More than 11 years transpired after his first injury before this amended petition was filed, claiming any damage resulting from the construction of said bridge. The whole history of this case shows that the claim of injury resulting from the improper construction of the bridge, or the accumulation of *debris* thereat, appears for the first time in this amended petition, although this controversy and litigation between the railroad company and the adjacent landowners has been in progress for years. The case of *Dickson* v. *Railroad Co.*,

71 Mo. 575, was based exclusively upon the wrongful act of the railroad company in filling up the old channel and making the embankment there. Nothing whatever was predicated in the petition in that case on the improper construction of the bridge. It therefore does seem to me that there is no escape from the conclusion that this is a new cause of action, first instituted by the filing of the amended petition, in 1889, and that the statute of limitation is an effectual bar. The demurrer to the evidence is therefore sustained.