FRANCES THERESA GATTA vs. PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY, a corporation existing under the laws of the State of Delaware.

*Commencement of Actions — Summons—Declaration—Amendment of Declaration—New Cause of Action—Statute— of Limitations—Amendment of Parties—Negligence —Evidence—Injuries to Person on Railroad Track.*

1. Subject to exceptions, an action is commenced by filing with the Prothonotary a petition, directing him to issue a summons for the defendant, appropriate to the proposed action, disclosing the *form* but not the *cause* of action.

2. A summons, appropriate to the proposed action, does not contain, as did the original writ, a statement of the cause of action; and when served the defendant is not thereby apprised of the cause of action, and not until the plaintiff files his declaration as required by rules of Court.

3.   *Secs.* 11 *and* 15 *Chap.* 112, *Rev. Code,* 849 *and* 850, *and Art.* 4, *Sec.* 24, *Const.,* allowing amendments of the form of action and of any pleadings or proceeding in form or substance, are liberally construed and applied by the Court.

4.   The practice of permitting the declaration to be amended after the statute of limitations has run, is unbroken.    The statute runs from the time of the  accruing of the cause of action to the time of beginning the action, and not after beginning the action.

5.   At common law a mistake in the form of action brought was serious, due probably to the fact that the original writ by which the defendant was brought into court, unlike the summons herein, contained a statement of the cause of action to which the defendant was summoned particularly to reply.

6.   The principal purpose of the summons, appropriate to the proposed action, here is to compel the appearance of the defendant in Court to answer the demand to be shown afterwards in the declaration.

7.   The running of the statute of limitations against the cause of action is arrested by bringing the action.

8.   If an action is brought in time, the statute of limitations cannot be invoked in bar of the action set forth in the original declaration, though the latter be filed after the period of limitation from the accruing of the cause of action, nor can it be invoked in bar of any amendment of the declaration, if deemed reasonable and allowed by the Court.

9.   Where the original declaration alleged, among other matters, that the deceased was *an employee of the defendant company,* an amended declaration, filed after the one year limitation from the time of the accruing of the cause of action, alleging that the deceased was *an employee of the Pullman Company,* that the defendant company was engaged in taking cars to and  from the yards of the Pullman Company, and that the deceased was killed while in the discharge of his duty as an employee of  the Pullman Company because the defendant failed to warn him of the movement of the cars, did not state a new  cause of  action against  which the statute of limitation would run,

10.   The Court will permit an amendment of the declaration, transposing the surname of the plaintiff therein  from T. F. to F. T., so as to correspond with the *praecipe* and the writ.

11.   Where there is no evidence of negligence, or no evidence from which the jury may reasonably infer negligence, it is the duty of the Court to withhold the case from the jury.

12.   Where it clearly appears from the testimony, introduced by the plaintiff that there was contributory negligence, on the part of the de-

ceased, proximately contributing to the accident, at the time of its occurrence, it is the duty of the Court to withhold the case from the jury.

13.   In an action for the death of an employee of the Pullman Company against a railroad company, employed to take cars to and from the yards of the Pullman Company, it being shown that the deceased was familiar with the surroundings, and dangers of the yard, and knowing that cars were likely to be moved at any time, after the usual warning, which was given very shortly before the accident, it was *held* that the deceased, having gone from the place where he could have heard the warning was required, on his return, to exercise reasonable diligence to ascertain if shifting was going on, and if he heedlessly went between cars without exercising such diligence, he was guilty of contributory negligence.

Del. cases cited: *Ennis vs. Ennis*, 5 *Harr.*, 390.

1 *Woolley on Del. Prac., Sec.* 323.

Statute of limitations in actions for personal injuries, *Chap.* 594, *Vol.* 20, *Laws of Del., p.* 712.

(*April* 6, 1910.)

Judges BOYCE and HASTINGS sitting.

*Anthony Higgins* and *Horace G. Eastburn* for plaintiff.

*Andrew C. Gray* and *John F. Neary* for defendant.

Superior Court, New Castle County, March Term, 1910.

Verdict and judgment for defendant.   Writ of error sued out by plaintiff.

SUMMONS CASE (No. 57, September Term, 1907), brought by widow to recover damages for death of husband, who was, at the time of the accident, employed by the Pullman Company, it being alleged that the death was occasioned by the negligence of the defendant company, while engaged in taking cars to and from the property of the Pullman Company.

At the trial, after the jury had been sworn and before proceeding to hear any testimony in the case, counsel for the plaintiff stated to the Court that they relied upon the amended declaration; whereupon, counsel for the defendant moved that the  jury

be instructed to return a verdict for the defendant for the reasons stated in the opinion of the Court first following.

BOYCE, J., delivering the opinion of the Court:

This action was brought on the ninth day of August, A. D. 1907. The death of Charles Gatta, the husband of the plaintiff, is alleged to have been occasioned by the negligence of the defendant company, on the twenty-eighth day of June, A. D. 1907.

The original declaration was filed for the plaintiff on the eighth day of August, A. D. 1908, and it contained three counts.

The material allegations in the first count of the declaration are, in substance, (1) that Gatta was an employee of the defendant company; (2) that it was the duty of the defendant company to furnish a sufficient train crew, and that the defendant company did not have any one on the shifting engine to control or give warning as to its movement; and (3) that Gatta was engaged in his duties by order of the defendant company at or near the track when the accident happened.

The allegations in the two remaining counts are similar. Leave to amend the said declaration was granted by the Court, and the amended declaration, now relied upon, was filed on the twenty-first day of January, A.D.1910, and it contained five counts.

The material allegations in the first count of the amended declaration are, in substance (1) that Gatta was an employee of the Pullman Company; (2) that the defendant company was engaged in taking cars to and from the property of the Pullman Company; and (3) that openings between certain cars had been made, for the benefit of the Pullman Company's employees and that Gatta was injured while in the discharge of his duty as an employee of the Pullman Company, by reason of the failure of the defendant company to warn him of the movement of the cars.

The allegations in the four remaining counts are similar.

The defendant company pleaded not guilty and the act of limitations. The act of limitation of personal actions, relied upon, reads:—"That from and after the passage of this act no

action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of one year from the date upon which it is claimed that such alleged injuries were sustained." (*Chapter 594, Vol. 20, Laws of Delaware, p. 712.*)

After the jury had been sworn, and before proceeding to hear any testimony in the case, counsel for the plaintiff stated to the Court that they relied upon the amended declaration; whereupon, counsel for the defendant moved that the jury be instructed to return a verdict for the defendant for the reason that the liability of the defendant company, as disclosed by the original declaration, was predicated upon duties arising from a contractual relation,—that is, the relation of master and servant, between Gatta, the deceased, and the defendant company, while the liability as shown by the amended declaration was not based upon duties arising from such a relation but upon duties owing to a stranger, who was not a trespasser on the premises of his employer, at the time of the accident, but who had a right to be there in the performance of work for his employer, and that, therefore, the amended declaration set forth a new cause of action, different and distinct from that set forth in the original declaration. And because the amended declaration was filed after the expiration of one year from the date when the alleged injuries were sustained, it was urged that the said act of limitation was a bar to a recovery under the amended declaration.

It was contended (1), generally, that when a cause of action set forth in an amended pleading, in a pending litigation, is new, different or distinct from that originally set up, the amended pleading is equivalent to the bringing of a new action, and that the statute of limitation runs against such new cause of action down to the time it is filed, and does not relate back to the time of the bringing of the action, and (2) particularly, that the amended declaration, in this case, sets forth an entirely new, different and distinct cause of action, in that it is founded on an entirely different statement of facts, out of which arise new and different relations and duties. It was urged that under the original dec-

laration the defendant was entitled to all the defences that arise out of the contractual relation of master and servant, while under the amended declaration new and different duties and liabilities arise, requiring other and different defences.

Counsel for the plaintiff contended that the said statute of limitation was restricted in its operation to the time of the bringing of the action, and that it did not run to the time of the filing of the original declaration under the rules of Court, or to the time of the filing of any amendment thereof, subsequently permitted by the Court, under our constitutional and statutory provisions in relation to amendments of pleadings in civil causes.

The question presented for our consideration and determination is interesting, and, so far as we are advised, it is one of first impression in this State. Subject to certain exceptions, an action is commenced, in this State, by filing with the Prothonotary a *præcipe*, directing him to issue a writ of summons for the defendant, appropriate to the proposed action. The *præcipe*, in proper form, contains the names of the parties, the form of the action, and it determines the character of the writ to be issued. The writ of summons sets forth the *form of the action*, but it does not contain any statements, disclosing the *cause of action*. The defendant is not apprised of the cause of action until the plaintiff files his declaration. Upon the appearance of the defendant, the pleadings follow as directed by the rules of Court. The plaintiff files his declaration as required by the rules, in which he alleges the facts necessary to set forth his cause of action. The declaration may contain several different statements, or counts, of the same cause of action. At common law a mistake in the form of action brought was serious, for the courts considered it of great importance to preserve the boundaries between the different actions, and hence they would not allow the parties, even by agreement, to try a question, or to recover, in the wrong action. This attitude was maintained in all probability, because the original writ by which the defendant was brought into Court, contained a statement of the cause of action to which the defendant was summoned particularly to reply. After appearance to the action

as stated in the original writ, it was considered something of a hardship to compel the defendant to answer under the process to any other action than the one stated in it.    But as the principal purpose of the original process in our practice, is to compel the appearance of the defendant in Court, there to answer the claim or demand to be. declared against him in the declaration, rather than to acquaint him with the claim or demand in detail, to which he is particularly summoned to answer, a mistake in the form of action in this jurisdiction will be productive, in the sound discretion of the Court, of no more serious consequence than delay and expense.    For *Section* 15, *Chapter* 112, *Rev. Code* (1893) *p.* 850, provides that whenever a plaintiff in an action shall have mistaken the form of action suited to his claim, the Court, on motion, may permit amendment to be made on such terms as they shall judge reasonable.    (1 *Woolley* 228, *Sec.* 323; *Ennis vs. Ennis*, 5 *Harr.* 390.)    And likewise the consequences of mistake in pleadings have been largely overcome by constitutional and statutory provisions.    *Art.* 4, *Sec.* 24, *of the Constitution of this State* (1897) provides that "In civil causes, when pending, the Superior Court shall have the power, before judgment, of directing, upon such terms as it shall deem reasonable, amendments, impleadings and legal proceedings so that by error in any of them, the determination of causes, according to their merits, shall not be hindered."    *    *    *.

And *Section* 11, *Chapter* 112, *Rev. Code* (1893) *page* 849, provides that, "In any civil cause pending before the Superior Court, the said Court shall have power, at any time before judgment, to allow amendments either in form or substance, of any process, pleading or proceeding, in such action, on such terms as shall be just and reasonable."

This Court has uniformly construed and applied these provisions liberally.    It must be assumed that the statute of limitation, invoked in this case, in bar of this action, as based upon the said amended declaration, was, within, legislative intendment, enacted in view of the the said recited wise and salutary provisions, respecting amendments, with regard for them and not as in

conflict with them.   And while counsel cited many cases in support of their contention that a new, different or distinct cause of action cannot be pleaded by amendment after the statute of limitation has run, we take notice of the fact that the practice in this Court of permitting the plaintiff to amend his declaration after the statute of limitations has run, is unbroken, and it has never been regarded that the statute runs other than from the time of the accruing of the cause of action to the time of bringing the action, and not after docketing the action.

Under the broad and liberal terms of the said provisions, respecting amendments, it seems to us under a fair and reasonable construction thereof, that the bar of the statute of limitation is at least, in this case, confined to the time of bringing the action, and that to hold otherwise would be to indulge in judicial legislation. Indeed, aside from this position, it seems clear to us that the said amended declaration does not set up a new cause of action.   It does not make, or involve, any change in the parties, writ, nature, or subject matter of the action brought.   The statements of the cause of action therein are appropriate to the form of action sued out.   The allegations refer to the same occasion, place and accident, and, though reformed by the amended declaration, they tend to establish the same act of alleged negligence.   They merely vary the mode of stating the cause of action, or restate the facts in a different legal aspect.   They amount to no more than a correction of a misdescription of the same cause of action. They allege the same negligent acts towards the deceased, between whom and the defendant company, it is true, there is shown a different relation, which necessarily affects the defendant's liability by eliminating certain defences applicable only to the cause of action, as stated in the original declaration, but such an amendment does not create a new and distinct cause of action.

The decisions in some of the jurisdictions, relied upon by counsel for the defendant, are undoubtedly based upon their procedure acts.   Especially in jurisdictions under the code systems where actions are commenced by filing a petition, complaint or statement, setting forth the cause of action, analogous to what

was done in the original writ, as we have shown.   The provisions in some jurisdictions, respecting amendments, are more restricted in the extent of their application, than those of this State which we have recited.   Some of these provisions expressly prohibit the introduction of a new, or independent cause of action   by way of amendment, at one stage or another in a proceeding.   It seems that in some jurisdictions, an amendment will not   be allowed, if it changes either the form of action, or the   cause of action, or if it introduces a new cause of action.   In this State, however, amendments, both of the form of action and of any pleading or proceeding, either in form or substance, are permissible, if deemed reasonable by the Court.   From the limited time we have had to examine many of the cases cited, it would seem that the leading case of *Sicard vs. Davis*, 6 *Peters*, (*U. S.*) 124, has been mistakenly applied to a different state of facts from those upon which the decision in that case was rendered.   It was a case of ejectment.

Chief Justice Marshall said: "Limitations might be pleaded to the second allegation, though not to the first, because the second count in the declaration, being on a *demise from a different party asserting a different title*, was not distinguishable, so far as respects the bar of the act of limitations from a new action." The amendment sets up a new demise from a different party, asserting a different title.   In ejectment the lessor of the plaintiff must have had the right of possession at the time of the demise mentioned in the declaration and *at the commencement of the action*, which, in the fictitious form, is begun by serving the declaration, etc., which takes the place of the writ of summons. That case furnishes no authority for the Court to hold that the amendment of the declaration in this case sets up a new cause of action so far as respects the bar of the act of limitation, or any other matter.

The case of *Union Pac. Ry. Co. vs. Wyler*, 158 *U. S.* 285, to which our attention was directed with so much earnestness, is also very different from the case here.   The decision rendered in that case is not persuasive to us in determining this.   Indeed we think

such an amendment might very properly be allowed by this Court.

The plaintiff brought an action in a Missouri court against the defendant corporation for a personal injury, which occurred in April, 1883, alleging that defendant employed, as a fellow-servant of plaintiff, one K., who was, and was known to defendant to be, incompetent, and unfit for his position, and that, through the negligence of defendant in employing said K., the injury happened. The cause was removed to the federal court, and, after proceedings there, plaintiff amended his petition by adding an averment that the injury resulted from the negligence of defendant, its agents and servants, and in consequence of the negligence of said K. In November, 1888, plaintiff again amended his petition by omitting the allegations as to the incompetency of K., and defendant's knowledge thereof and rested the cause of action solely on the negligence of K., under a statute of Kansas, in which State the injury occurred, giving a right of action for the negligence of a fellow-servant, which statute was pleaded. And it was *held*, that the second amended petition, by changing the ground of the action from the general law to a special statute, constituted a departure, and set up a new and different cause of action from that stated in the former petitions." * * *

And the Court said: "The amended petition, which averred the statute of Kansas, having asserted a new cause of action, the next question is, was recovery under this petition barred by the Missouri statute of limitations? The general rule is that an amendment relates back to the time of the filing of the original petition, so that the running of the statute of limitations against the amendment is arrested thereby. But this rule, from its very reason, applies only to an amendment which does not create a new cause of action. The principle is that, as the running of the statute is interrupted, by the suit and summons, so far as the cause of action then propounded is concerned, it interrupts as to all matters subsequently alleged by way of amendment, which are part thereof. But where the cause of action relied upon in an amendment is different from that originally asserted, the reason

of the rule ceases to exist, and hence the rule itself no longer applies.

Differing from some jurisdictions, an action here, as we have already shown, is not begun by filing a petition, complaint, or other statement of facts, setting forth the cause of action, at the time summons issues to the defendant, and, because of the difference in the practice as well as because of our liberal provisions respecting amendments, we see no reason for our adopting the rule that pleadings, or certain of them, do, or do not, relate back to the bringing of the action.

The running of the statute of limitations against the cause of action is arrested by the bringing of the action. And there is no occasion for the fiction that certain pleadings do, or do not, relate back to the time of bringing the action. As the running of the statute is interrupted by bringing the action, if brought in time, so far as the form of the action brought is concerned, it can never be invoked in bar of the cause of action, set forth in the original declaration, nor in bar of any amendment thereof, if deemed reasonable and allowed by the Court. Some of the cases more particularly relied upon by counsel for the defendant, are:—

*Central Georgia Ry. Co. vs. Williams*, 31, *S. E. Rep.* 134; *Mahoney vs. Parke Steel Company*, 66 *Atl. Rep.* 91; *Box vs. Chicago Ry. Co.*, 107, *Iowa* 660; *Woodline, Act. p.* 14, *Note* 4; *Busu. Line, p.* 515; *Railroad Co. vs. Smith*, 81 *Ala.* 229; *Chicago & A. R. Co. vs. Scanlan* 48, *N. E. Rep.* 826; *Wabash R. Co. vs. Bhymer*, 214, *Ill.* 579; *Chicago City Ry. Co. vs. Boch*, 182 *Ill.* 359; *Fish vs. Farwell*, 43 *N. E. Rep.* 367; *Nat. Life Ins. Co. vs. People*, 209 *Ill.* 42; *Haley vs. Hobson*, 68 *Me.* 61; *Railroad Co. vs. Jennings*, 190 *Ill.* 478; *Burton vs. Chicago &c. Ry. Co.*, 41 *Fed.* 744; *Boston vs. Hurd*, 108 *Fed.* 124; *Whalen vs. Gordon*, 95 *Fed. Rep.* 305; *De Valle Etc. vs. So. Pac. Co.*, 167 *Fed.* 654; *Baner L. & Coll. Co. vs. Leffingwell*, 105 *P.* 427; *Margenlein vs. City of Chicago*, 141 *Ill. App.* 414; 86 *N. E.* 670; *Dobbs vs. Pearl*, 118 *N. Y. S.* 485; *Waters vs. City of Ottawa*, 88 *N. E.* 651; *Spuyten Duyvil Road*, 116 *N. Y. S.* 857; *Union Pac. R. Co. vs. Sweet*, 96 *Pac.* 657; *Lane vs. Water* ·

Co., 69 Atl. 1126; 220 Pa. 599; Beadley vs. Chic. etc. Coal Co.,
83 N. E. 424; 231 Ill. 622; Johnson vs. A. S. & R. Co., 114 N. W.
144; 116 N. W. 517; Booth vs. Housten Packing Co., 105 S. W. 46;
Meinhausen vs. Brew. Co., 113 N. W. 408; 133 Wis. 95; Powers vs.
Lumber Co., 90 P. 254; Van Cleve vs. Radford, 112 N. W. 754;
Hess vs. Bir. Ry. L. & P. Co., 42 So. 595; Gillmore vs. City of
Chicago, 79 N. E. 596; Serrell vs. Forbes, 78 N. E. 1112; 185
N. Y. 572; Fleming vs. City of Anderson, 76 N. E. 266.

Since the argument, our attention has been directed to the
case of State, to use of Zier vs. Chesapeake Beach Ry. Co., de-
cided by the Court of Appeals of Maryland, 56 Atl. Rep. 385. It
was, like this, an action to recover damages for the death of a
husband. The suit was brought on the third day of January,
A. D. 1901. On the 14th day of June following, a declaration,
containing a single count, was filed. On the 17th day of April,
A. D. 1902, leave was obtained to file an amended declaration,
containing two counts. There was a plea to the effect that the
alleged cause of action did not occur within twelve calendar
months before the filing of the amended declaration. The first
count in the amended declaration was an exact copy of the origi-
nal declaration. The second count alleged what the first one
omitted, viz.: that the negligence of the defendant consisted in
its failure to use proper care in selecting the fellow-servants by
whose carelessness the death of Z. was caused. And it was in-
sisted that the said second count of the amended declaration de--
clared upon a distinct and wholly independent cause of action,
set up for the first time, on the said seventeenth day of April,
more than twelve calendar months after the cause of action had
accrued. The court below, by its ruling on a demurrer, so
found. An appeal was taken. On the appeal, the Court said:—
"The institution of a suit arrests the running of the statute of
limitations, and the general rule is that when the period of limi-
tation has not elapsed before the suit was brought, a mere amend-
ment of the declaration, when the cause of action remains the
same, will not warrant the filing of a plea of limitation, even
though the statutory period has intervened between the time

when the cause of action accrued and the date of making the amendment. The reason for this rule is that the bringing of the suit stops the running of the statute, and, consequently, so long as the suit proceeds for the same cause of action, the bar of the statute cannot attach" * * *. * * *.

"Did the amendment change the cause of action? * * * The original declaration, though defective, was founded on the alleged negligence of the defendant. The fact that the narr was insufficient in law—that it did not accurately and formally set forth the real cause of action—did not prevent the suit itself from being a pending suit wherein the gravamen was the negligence of the defendant. When the amendment was made, precisely the same cause of action was declared on. It is true it was imperfectly stated in the first count, but in the second it was correctly set forth. The negligence alleged in the first count was the negligence of the defendant through its agents, but was none the less the negligence of the master, though, as respects a servant of the master, it was not actionable. In the second count the negligence alleged was again the negligence of the master in failing to exercise due care in the selection of the fellow servants by whom the injury was inflicted. But the suit to recover for the defendant's negligence was precisely the same after the amendment had been made that it was antecedently. The statement of the cause of action was different, but the cause of action itself was identical. Injury resulting in death is what occasioned the suit. The imperfect statement of the case did not cause the correct statement of it to be a different cause of action. Being the same cause of action, the accurate statement of it in the amended declaration did not convert the original suit into a new and different suit, and therefore did not warrant the filing of a plea of the statute of limitations." * * *

Our conclusion is that the act of limitation, interposed in this case, does not operate as a bar to the cause of action set forth in the amended declaration, the action having been brought within one year from the date it is alleged to have accrued.

We therefore decline to instruct the jury as requested.

Thereupon counsel for plaintiff stated to the Court that before going on with the case they desired to file a short amendment to the declaration, transposing the surname of the plaintiff, which was stated in the declaration as "Theresa F." while in the writ and the *præcipe* it was stated as "Frances Theresa;" the proposed amendment changed the name in the declaration to "Frances Theresa" so as to make it correspond with the writ and the *præcipe*.

Counsel for defendant objected, stating that they were aware of the difference in the names as above stated, and were prepared to take advantage of it on a motion for a nonsuit; and asked, if the Court granted the amendment, that the case might be continued under the circumstances. No authorities were cited.

The amendment was allowed, and the motion to continue refused. To which the defendant noted an exception.

At the conclusion of plaintiff's testimony, Mr. Gray, of counsel for defendant, moved for a nonsuit, for the reasons as stated in the following opinion of the Court; which shows the essential facts introduced in evidence on the part of the plaintiff:

Boyce, J. delivering the opinion of the Court:

The Court have given careful and thoughtful consideration to the motion which is now before us, and we will now announce our conclusion.

At the close of the testimony for the plaintiff, counsel of the defendant company moved for a nonsuit upon the ground, *first*, that the statute of limitation pleaded in this case operated as a bar to the plaintiff's action set forth in the amended declaration; *second*, that the testimony failed to show that the defendant was guilty of negligence; and *third*, that the testimony showed that the plaintiff's husband was guilty of contributory negligence. We have already disposed of the first reason in support of the motion for a nonsuit.

24 Del.]        GATTA vs. P., B. & W. R. R.              307

Opinion.

Charles Gatta, the plaintiff's husband, was, on the twenty-eighth day of June, A.D. 1907, the day on which the accident, causing his death, occurred, and had been for a considerable time, employed by the Pullman Company. The Pullman Works and Yards were at the time of the accident and now are on the east side of and adjoining the right of way and tracks of the defendant company, in this City, and are connected with the track of the defendant company by a siding. The Pullman Company has within its yard its own private tracks on which its cars are placed from time to time for repairs and other purposes. These private tracks are known as A. B. and C, respectively; track A. is next to the buildings, and the other two in the order named parallel track A.

The defendant company was at the time of the accident employed to do the shifting work for the Pullman Company. On the morning of the accident and until about fifteen minutes before the accident the servants of the defendant company had been engaged in shifting cars on track C, of the Pullman Company, which was known to the plaintiff's husband who was at the time working in a car on track B. About fifteen minutes before the accident the deceased left the car in which he had been at work and went into what is known as the trimming building of the Pullman Company to see his foreman with reference to the work he was engaged in on the said car in which he had been working. In going to see his foreman, he crossed over track A. in some unknown manner. While in the said building with his foreman, the shifting engine left track C. and came into the yard on track A. The engine was stopped upon entering on track A. and the usual warning was given by servants both of the defendant company and the Pullman Company, by crying or shouting aloud along track A., upon which there were four or five cars, "Look out for cars on track A." This warning was given while the plaintiff's husband was with his foreman in the said building and it was given, from the varying testimony of witnesses, from two to four minutes before the accident. It was not heard by the foreman and presumably it was not heard by the deceased. It was however such a warning as was heard by all the men employed on or about cars on tracks A. and B.

After this warning had been given, varying in time as we have said from two to four minutes, the plaintiff's husband came out of said building with his foreman, and walking very fast between track A. and the building, some eight or ten feet in advance of the foreman, who had only taken a step or two from the door of said building, out of which they had come, he, the plaintiff's husband, passed between two cars standing apart on track A., two and a half or three feet. ˙ He was seen on the opposite side by one of the witnesses, a servant of the Pullman Company, to stop long enough for some one to pass from the platform of one of said cars to the other, and, just as he was about to pass out between said cars, the shifter moved forward and the two cars came together and crushed him; and from the injuries thus received he died very soon thereafter.

It appears from the evidence that rules were posted by the Pullman Company in several places on its buildings near the accident, forbidding employees, in substance among other things, from working under the cars or upon scaffolds in the cars or passing between the cars while shifting was going on.

If there was no evidence of negligence on the part of the defendant company, or no evidence from which the jury could reasonably infer negligence, it becomes the duty of the Court to withhold this case from the consideration of the jury.

If it clearly appears from the testimony introduced by the plaintiff that there was contributory negligence on the part of the plaintiff's husband, proximately entering into and contributing to the accident at the time of its occurrence, it becomes the duty of the Court to so find as a matter of law, and upon such a finding to withhold the consideration of the case from the jury.

The defendant company by its servants, as well as by, at least, one of the servants of the Pullman Company, gave the special warning to which we have referred, before moving any car on track A., and that this warning was sufficient for all persons then working on that track is the testimony of all the witnesses to the accident.   It seems to us that the defendant company was not bound at that time to extend the warning to employees in the

building.    The defendant company could not reasonably expect such persons were in danger or would put themselves in a dangerous position.    An employee of the Pullman Company, familiar, as the plaintiff's husband was, with the conditions and surroundings and dangers in and about the yard, and knowing that cars were likely to be moved at any time, on any of the tracks, after the usual warning, having gone away from the place where he could have heard such warning, was required, upon his return, to exercise reasonable diligence to ascertain whether or not shifting was going on, or about to go on, and on which track.    And if without exercising such diligence he should negligently or heedlessly go between cars, he would assume the risk of danger, incident thereto.

After the most careful consideration that we have been able to give the evidence, it does not seem to us that any evidence has been adduced by the plaintiff from which the jury could reasonably infer negligence on the part of the defendant company; and that is a sufficient reason why the case should not be submitted to the jury.    Indeed, if that is the state of the evidence, it becomes the duty of this Court to withhold the case from the jury.

But assuming that there was negligence on the part of the defendant company such as would make it liable, or, assuming that testimony has been adduced from which the jury might reasonably infer such negligence; then we find, after the most careful consideration of this evidence, that the plaintiff's husband was, at the time of the accident, guilty of contributory negligence. There is no dispute that the testimony shows that Gatta and his foreman came out of the building of the Pullman Company together and that Gatta himself walked very fast some eight, ten or twelve feet—not exceeding fifteen feet—down alongside of the Pullman building and then disappeared between the two cars. Whether he could have seen the engine or not, it was in front of him.    We may assume he being dead, (and it not being shown that the foreman, who was following Gatta, either saw or could see the engine), that the deceased could not see it.    But certainly,

when we take into consideration the dangerous character of the yard and of the surroundings, the rules that were posted on the buildings, the particular warning that was given on this morning when the shifter had changed from track C. to track A.—and there is no doubt from the evidence that it was a sufficient warning for everybody else, and Gatta's familiarity with the premises and conditions—when we take all these matters into consideration, we cannot escape the conclusion that the plaintiff's husband was, at the time of the accident, guilty of contributory negligence. And for both the reasons assigned, we are constrained to grant this motion for a nonsuit.

*Mr. Eastburn:*—We decline to take the nonsuit.

Boyce, J., charging the jury:

Gentlemen of the jury:—Counsel for the plaintiff declines to take the nonsuit. We instruct you to return a verdict for the defendant, for the reasons which the Court have assigned.

Verdict for defendant.