## MILLER v. HAMNER.

(Circuit Court of Appeals, Third Circuit. December 28, 1920.)

No. 2581.

1. **Banks and banking ☞248(2)—Comptroller can conclusively assess stockholders' liability.**

The Comptroller of the Currency can order an assessment upon the shares of an insolvent national bank, which is conclusive upon the shareholders, and enforce payment thereof through a receiver of his appointment.

2. **Banks and banking ☞250(1)—Suit for fractional part of stockholder's liability is in equity.**

A suit to enforce a fractional part of a shareholder's liability on assessment to pay the debts of an insolvent national bank, though based on the statute, is in equity.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Banks and banking** ☞248(6)—**Estate liable for stock held by it when insolvency occurred.**

Under Rev. St. § 5151, superseded by Act Dec. 23, 1913, § 23, the estate of a deceased shareholder in a national bank is liable on the stock held by it, though insolvency of the bank occurs and assessment on the policy is made after his death.

4. **Courts** ☞375—**State limitation statutes apply to suits to enforce national bank stockholder's liability.**

In the absence of federal provisions, state statutes of limitation apply to suits brought to enforce payments on assessment against the stockholders of an insolvent national bank.

5. **Executors and administrators** ☞282—**Personally liable for settling estate without paying statutory liability.**

An executor, who settles an estate without making provision for or disposing of a liability imposed thereon by statute, may in a proper action seasonably brought be held personally liable for devastavit.

6. **Equity** ☞427(1)—**Relief must conform to bill.**

The relief granted in equity must conform to the case made by the bill.

7. **Equity** ☞427(3)—**Personal decree not authorized in suit against executor as representative.**

A bill charging the defendant with liability only as executor of an estate does not authorize a decree against him personally, though he is personally liable, and though the bill contains a prayer for general relief, since such prayer does not vary the rule against relief inconsistent with the case made by the bill.

8. **Limitation of actions** ☞127(17)—**Recovery on supplemental bill stating new cause of action is barred.**

When a supplemental bill in equity to hold an executor personally liable for devastavit states a new cause of action, that action is subject to the operation of an applicable statute of limitations.

Appeal from the District Court of the United States for the District of Delaware; Charles B. Witmer, Judge.

Suit by George C. Rankin, as receiver of the First National Bank of Alma, Kan., for whom was substituted Charles D. Hamner, as receiver, against Charles R. Miller and others. Decree for complainant against the defendant Miller (263 Fed. 956), and that defendant appeals. Reversed and remanded.

See, also, 266 Fed. 236.

Willard Saulsbury and Richard S. Rodney, both of Wilmington, Del., for appellant.

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and Walter C. Sheppard, both of New York City, of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. In this litigation, instituted by a receiver of an insolvent national bank to collect an assessment from the executors, trustees, legatees or devisees of a deceased shareholder, culminating after eighteen years in a decree against one of the executors personally on his individual liability as a tort feasor, many questions have been raised and decided, which, as we regard the case, do

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

not require discussion on this appeal. We shall therefore give in outline only so much of the extended and complicated record as will bring to view the matter on which we think the case turns and will show the reasons for our judgment. For more detailed statements reference is made to opinions delivered at different stages of the case, reported at 130 Fed. 229; 199 Fed. 342; 207 Fed. 602; 266 Fed. 236; 263 Fed. 956.

The First National Bank of Alma, Kansas, was incorporated in 1887 under the National Bank Act (13 Stat. 997). Robert H. Miller, owner of 150 shares of its capital stock, died August 31, 1890. In the following November the bank closed its doors and was declared insolvent by the Comptroller of the Currency.

The shares of stock owned by the decedent passed to Charles R. Miller and James Baily, executors named in his will, and were accounted for in the inventory and appraisement of his estate. Charging themselves with the amount of the appraisement, the executors, in October, 1892, passed their first and final account showing a distributive balance of $18,991.75. This balance, as evidenced by releases and acquittances of record, was fully distributed to the legatees named in the will. These embraced Charles R. Miller, trustee under the will of Robert H. Miller, Deceased, and Charles R. Miller and sundry other named children of the testator. As the distribution was made conformably with the laws of Delaware, it does not appear whether the shares of stock—then having become valueless—remained in the hands of the executors as a part of the testator's estate not administered, or had been distributed by them to the legatees.

In January, 1893,—that is, in the year following the final settlement of the estate of Robert H. Miller,—the Comptroller of the Currency ordered an assessment of $44 upon each share of the capital stock of the bank. This assessment on the shares of the testator was not paid by the executors or distributees of his estate nor was payment thereof demanded by suit. Action therefor has for a long time been barred by statute of limitations. In December, 1900, a second assessment, amounting to $14.60 on each share, was ordered and demand therefor was duly made upon shareholders as provided by Sections 5151 and 5234 of the Revised Statutes of the United States.

In April, 1902, George C. Rankin, the third receiver of the bank, filed a bill in the Circuit Court of the United States for the District of Delaware to enforce the collection of the last assessment against Charles R. Miller and James Baily, Executors of the estate of Robert H. Miller, deceased; Charles R. Miller and James Baily, Trustees under the will of Robert H. Miller, deceased; The Equitable Guarantee & Trust Company, a corporation under the laws of the State of Delaware, as surety for Charles R. Miller and James Baily, Executors of Robert H. Miller, deceased; Wilmer W. Miller, Annie M. Baily, Elizabeth M. Baily, Charles R. Miller and R. Miller Baily. By this bill the present litigation was begun. Between the date of filing the bill and the next pertinent date presently to be named, Rankin resigned and Scott Nesbitt was appointed receiver. Although apparently Nesbitt was not a party to the suit, the case proceeded. Sun-

dry demurrers were filed and ruled on; motions were made and disposed of; and testimony was taken before a Commissioner. In the meantime James Baily, co-executor and co-trustee with Charles R. Miller, died. On the completion of the testimony and without joining Baily's personal representatives, Judge Bradford, on July 15, 1913, handed down an opinion (which for convenience we shall refer to as the opinion of 1913) dealing with many questions raised by the defendants. 207 Fed. 602.

On this opinion no decree was entered. In December, 1915,—more than two years after the opinion of 1913 had been filed (a motion for a decree nunc pro tunc having been made and denied),—a supplemental bill was filed by Charles A. Korbly, the receiver succeeding Nesbitt. The filing of this bill was followed by the defendant's motion for its dismissal, followed later by confusion in the record out of which arose a question of abatement of the suit, disposed of adversely to the defendant by Judge McPherson in 1918 by an opinion reported at 266 Fed. 236.

On Korbly's resignation, Charles D. Hamner, the last of six receivers, was appointed, and in August 1918, he was granted leave to file still another supplemental bill, which, being connected by reference with the preceding Korbly supplemental bill and the Rankin original bill, was acted on by Judge Witmer in January, 1920, in an opinion (to which we shall refer as the final opinion) following that of Judge Bradford in 1913, and filed preliminary to the entry of the decree now appealed from, holding Charles R. Miller individually liable for the assessment on the stock of his ancestor.

[1-5] While the decree appealed from was not entered until 1920, it was based, as shown by the final opinion, on the opinion of Judge Bradford rendered in 1913 on the original bill of 1902, as well as on the Hamner supplemental bill. With many of the matters decided by Judge Bradford in his opinion of 1913 there can be no valid dispute, as, for instance, the power of the Comptroller of the Currency, conclusive upon shareholders, to order an assessment upon the shares of an insolvent national bank, and, through a receiver of his appointment to enforce payment thereof, Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Studebaker v. Perry, 184 U. S. 258, 22 Sup. Ct. 463, 46 L. Ed. 528; when a fractional part of a shareholder's liability to assessment is sought, the action, though on the statute, is in equity, Kennedy v. Gibson, supra; Casey v. Galli, supra; the individual responsibility of a shareholder, when living for the contracts, debts, and engagements of a banking association to the extent of the amount of his stock therein (Section 5151 of the Revised Statutes [superseded by Act Dec. 23, 1913, c. 6, § 23, 38 Stat. 273] and section 5152 of the Revised Statutes [Comp. St. § 9690]), and the responsibility of his estate therefor, when holding the shares, though insolvency of the bank occur and assessment on the shares be made after his death, Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; and, in the absence of Federal provisions, the applicability of state statutes

of limitations to suits brought to enforce payment of an assessment. McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500. Also, there can be little doubt that an executor who settles an estate without making provision for or disposing of a liability imposed by statute may, in a proper action seasonably brought, be held personally liable for devastavit. But the questions which arise from the decree, based in part on reasons first announced in the opinion of 1913, are, whether in the action as originally instituted against Charles R. Miller and others as executors, trustees, and legatees or devisees, a decree can be entered against Charles R. Miller individually for a devastavit; and whether, in the action as changed by the Korbly supplemental bill, declaring on another cause of action and asserting a different liability, Miller was not protected on his individual responsibility for a devastavit by the applicable Statute of Limitations of the State of Delaware. Answers to these questions require an investigation into the pleadings and a determination of the theory of the bills and of the remedies sought and granted.

The original bill of complaint was brought, as we have said, against sundry persons, among whom was Charles R. Miller in his several capacities of co-executor, co-trustee, and co-distributee under the will of the deceased shareholder of an insolvent national bank, to enforce the liability prescribed by Sections 5151 and 5152 of the Revised Statutes. By force of Section 5151 liability was fastened on the estate. This section provides that,

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Realizing from the terms of Section 5152 that

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders,"

the draftsman of the bill framed it on the theory, first, that complainant would find the estate of the deceased shareholder sufficient in assets or in the executors' surety to meet its statutory liability; and, if not, then he would follow the estate in the hands of those to whom it had been distributed. Pursuing this theory, the bill prayed that the amount of the assessment "be declared a lien upon all the estate of the said Miller that may have been received by the beneficiaries under the will of the said Robert H. Miller, deceased, or by the executors or trustees as aforesaid;" and that, "the executors, trustees and beneficiaries may be restrained from spending or disposing of any part of the said estate which may be held by said executors, trustees and beneficiaries;" and that the court may decree that they are "collectively and severally indebted" to the complainant in the named sum; and that the complainant may be granted "such other and further relief as the circumstances and the nature of the case, and equity, may require." It thus appears, not from the bill alone but also from the contention of counsel for the receiver, referred to by

the court in its opinion of 1913, that the action was against the estate of a deceased shareholder and the remedy sought was against the proceeds of the estate wherever found, whether in the hands of executors, of trustees, or of legatees. But on the bill so framed and on the evidence taken, the court (in the opinion of 1913, construing Section 5152 not to embrace "legatees or devisees" among those in whose hands the "estates and funds" of the deceased shareholder shall be liable) declined to enter a decree against the estate wherever found and against whomever held it,—that is, against the executors, trustees, and legatees or devisees,—but directed a decree against Miller and Baily jointly and severally as tort feasors, upon the theory that in settling the estate of their testator in 1892, with knowledge of the testator's liability on the shares of stock then held by the estate, they committed a devastavit which gave the receivers a right to recover from them individually the amount of the assessment afterwards ordered in 1900.

As the complainant did not, by his original bill, declare on a devastavit and did not pray that the defendants be held to individual liability therefor, it appears that the court by its opinion of 1913 granted relief not prayed for in the original bill on a case not made in that bill. As the court's theory of relief shown in that opinion was carried into the decree by the final opinion, we must pause here and examine the first opinion for error.

[6] Admittedly, "the relief granted in equity must be agreeable to the case made by the bill." Bebee v. Bank, 1 Johns. (N. Y.) 559, 3 Am. Dec. 353; Mitford's Pleading, 38.

[7] In Cloud, Adm., v. Whiteman, Ex., 2 Har. (Del.) 401, the Court of Errors and Appeals of Delaware in affirming the Chancellor (2 Del. Ct. 23) held, that a bill against one charging him *as executor* will not authorize a decree against him personally, though he be chargeable personally. Nor is the case aided by a prayer for general relief, for such prayer does not vary the rule against relief inconsistent with the case made by the bill. Cloud, Adm., v. Whiteman, Ex., 2 Del. Ch. 23; Bebee v. Bank, 1 Johns. (N. Y.) 559, 3 Am. Dec. 353; Smith v. Ardis, 49 Ga. 602; Hiem v. Mill, 13 Ves. Jr., 114; 33 Eng. Reprint, 237; Franklin v. Osgood, 14 Johns. (N. Y.) 527; Wilkin v. Wilkin, 1 Johns. Ch. (N. Y.) 114; Mitford & Tyler, Pleading and Practice in Equity, 133.

We are of opinion therefore that there was error in the relief awarded by the opinion of 1913 against Miller individually on the case made against him in the original bill, and that, in so far as the decree entered years afterward grants this relief on the original bill, as distinguished from the relief granted on the supplemental bill, it should be reversed.

We now come to that part of the decree which gives the same relief against Miller under the supplemental bills.

For some reason not entirely clear, no decree was entered on the opinion of 1913. But two years later, another receiver, Charles A. Korbly, evidently doubting the stability of a decree awarding relief inconsistent with the case made by the bill, filed a supplemental bill quoting expressly from that part of the court's opinion of 1913 in

which the court declined to hold the defendants liable as legatees or devisees, but held Miller and Baily jointly and severally liable as tort-feasors, and, setting up a case squarely within the terms of the opinion as delivered, prayed for a decree against Charles R. Miller alone holding him individually liable for the assessment because of his tort in closing out the estate of his testator without providing for the payment of assessments that might subsequently be made. It was in the Korbly supplemental bill, filed in December, 1915, that Miller was first charged with a tort in the nature of a devastavit, and it was in this supplemental bill that recovery of the assessment ordered in 1900 was first sought against him on his individual liability. As the supplemental bill of Korbly, filed in 1915, was followed in 1918 by a like supplemental bill filed by Hamner, the last receiver, on which the decree now appealed from was entered, there arises squarely the question whether the Delaware Statute of Limitations which began to run when the assessment was ordered in 1900 was arrested by the filing of the original bill in 1902, or continued to run, and consequently to bar the action against Miller on a tort declared on for the first time by the Korbly supplemental bill of 1915.

We do not understand it to be questioned that the case made and relief granted under the Korbly and Hamner supplemental bills were different from the case made and relief sought by the original bill.

Whether the Statute of Limitations runs against the action declared on in the Korbly supplemental bill and ultimately decided by the decree depends on the practice in Delaware of allowing amendments and supplemental bills changing the cause of action in a pending suit. The policy of the law with reference to amendments in suits at law, prevailing in Delaware and elsewhere, was discussed at length by the Superior Court and the Supreme Court in Gatta v. P., B. & W. R. R. Co., 1 Boyce (24 Del.) 293, 76 Atl. 56; and P., B. & W. R. R. Co. v. Gatta, 4 Boyce (27 Del.) 38, 85 Atl. 721, 47 L. R. A. (N. S.) 932, Ann. Cas. 1916E, 1227. While the decision in that case does not rule this case, the discussion there pursued throws light on the question now under review. There it appears from the cases cited that whether a new action declared on by amendment is barred by a statute of limitations depends largely on the form of the action, that is, whether instituted by summons to be followed by declaration or complaint showing the cause of action, in which case the statute ceases to run upon the bringing of the suit; or, whether commenced by bill of complaint or petition showing the cause of action, to be followed later by summons or subpœna, in which case the statute continues to run and operates as a bar to an action subsequently pleaded by amendment at a period beyond its limit. Applying this distinguishing principle to the practice in Delaware where suits are begun by summons and followed by declaration, the Delaware courts have held that an action subsequently declared on by amendment is not barred, though the amendment be made after the statute has run its limit. But the same policy that governs in suits at law applies with equal reasoning to the reverse procedure in suits in equity, where, as here, the initial

proceeding is by bill of complaint stating the cause of action to which the respondent is summoned to answer by the subpœna that follows.

[8] While this case does not require of us an expression of opinion on rules of equity with reference to the allowance of a supplemental bill showing a cause of action differing in whole or in part from that of the óriginal bill and praying relief different from that sought by the original bill, we do express the opinion that, when an entirely new cause of action is declared on by supplemental bill it is equivalent to the bringing of a new action and is therefore open to the operation of an applicable statute of limitations.

We find that the relief granted by the decree was not agreeable to the case made by the original bill; and that, though agreeable to the case made by the supplemental bills, it was granted on a new case there made against which the Statute of Limitations had run and had for many years barred recovery.

On this ground, without reviewing or deciding other questions raised on the appeal, we find error and direct that the decree below be reversed and the case remanded to be disposed of in a manner not inconsistent with this opinion.