MEINSHAUSEN, Respondent, vs. A. GETTELMAN BREWING COMPANY, Appellant.

*September 25—October 15, 1907.*

*Pleadings: Complaint: Amendment: New or different cause of action: Limitation of actions: Trial: Nonsuit: Directed verdict: Identity of causes of action.*

1. In an action on contract commenced nearly six years after its alleged performance, the cause of action alleged in the original complaint was based on an express contract, which was alleged to have been fully performed. The court, nearly three years after the action had been commenced, allowed the complaint to be amended so as to allege the making of the written contract, which was annexed, and to demand judgment *quantum meruit*, without alleging performance or any claim of performance of the written contract. The defendant not only objected to the amendment being made, but immediately thereafter answered the same by alleging the bar of the six-year statute of limitations. *Held:*

    (1) The cause of action *quantum meruit* was separate and independent from the cause of action on express contract.

    (2) No action *quantum meruit* was commenced until the filing of the amended complaint.

    (3) At the time it was interposed the cause of action *quantum meruit* was barred by the statute of limitations.

    (4) The complaint was improperly amended, and hence motions for a nonsuit and a directed verdict in favor of defendant were improperly denied.

2. An amendment of a complaint which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute of limitations against the claim so pleaded is arrested at that point.

3. An amendment to a complaint which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed.

4. Such rule applies although the two causes of action arise out of the same transaction, and although, by the recognized practice of pleading, the plaintiff is only required to state the facts which constitute his cause of action.

5. There seem to be three tests which are always useful to determine the identity of two causes of action: Will the same evidence support both? Will the same measure of damages govern both? Will a judgment against one bar the other? and no two causes of action can be identical concerning which all these questions must be answered in the negative.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This action was commenced January 23, 1904. The original complaint, verified February 18, 1904, alleged in effect that the defendant is a Wisconsin corporation; that September 10, 1897, the defendant entered into a written contract with the American Copper, Brass & Iron Works, an Illinois corporation, wherein and whereby that corporation agreed to manufacture, erect, and deliver in the brewhouse of the defendant "one complete ideal countercurrent wort cooling plant or apparatus," therein fully described; also "one steel hop-jack," therein described; also "one copper false bottom 10 feet wide and 12 feet long with brass frames;" also "85 feet of copper wort pipe;" also "one 12-foot steel beam support weighing 3,500 pounds." The original complaint further alleged

"that for all of the apparatuses and material manufactured, sold, and delivered by said American Copper, Brass & Iron

Works to said defendant, and for the work performed in and about the erection and completion of said several apparatuses, the said defendant agreed to pay to said American Copper, Brass & Iron Works the sum of $2,500 at the time of the completion of said contract, and further agreed to deliver to said American Copper, Brass & Iron Works a certain Baudelot cooler and connections, then in their possession, of the value of upward $475, at the same time. This plaintiff further alleges that said American Copper, Brass & Iron Works did, pursuant to said contract, manufacture, deliver, and erect in the brewery of said defendant the aforesaid wort cooler, steel hop-jack, steel I-beam, copper false bottom, and copper wort pipes, etc., and in every and all respects fully completed and performed all things required by it to be done under and by virtue of said contract; that said apparatuses and material were delivered and said work was completed on or about 12th day of March, A. D. 1898. This plaintiff further alleges that although said American Copper, Brass & Iron Works delivered all of the apparatuses and material, and performed all things required by reason of said contract, yet nevertheless the defendant refused and neglected to pay to said American Copper, Brass & Iron Works the whole or any part of the contract price, to wit, $2,500, and also failed and neglected to deliver to said American Copper, Brass & Iron Works the Baudelot cooler and connections, of the value of upward $475, as required by its said contract; that by reason of the premises there became due and owing from said defendant, the *A. Gettelman Brewing Company,* to said American Copper, Brass & Iron Works, the sum of $2,975, together with interest thereon from March 12, 1898, no part of which has ever been paid."

The original complaint further alleged, in effect, that July 2, 1902, the American Copper, Brass & Iron Works was adjudged an involuntary bankrupt; that April 1, 1903, William T. Fenton was appointed trustee in bankruptcy thereof; that November 9, 1903, the said trustee in bankruptcy, pursuant to an order in bankruptcy, sold and assigned said claim of said bankrupt to one George H. Meinshausen, who November 10, 1903, sold and assigned said claim to this plaintiff as the owner and holder thereof, and

demanded judgment therein for $2,975, with interest thereon from March 12, 1898, with costs and disbursements.

On March 7, 1904, the defendant answered such original complaint by way of admissions, denials, and counter allegations to the effect that the things so contracted for were to be all completed for the sum of $2,500 and the delivery of the defendant's Baudelot cooler mentioned; that the cooling apparatus so furnished did not work perfectly; that the entire apparatus was to be so furnished, delivered, and sold to the defendant on sixty days' approval, and, if the same failed to do its work properly, the same should be removed at the expense of said manufacturer; that all the work, labor, machinery, apparatus, and materials specified or referred to in said complaint were included in and to be furnished under such contract or agreement, and not otherwise; that the wort cooler, steel hop-jack, steel I-beam, copper false bottom, and copper wort pipes, etc., did not conform with the agreement or contract, in that the same did not work perfectly; that within sixty days after the erection and delivery of what was represented to be the things contracted for, the defendant disapproved of and rejected the same, for the reason that they did not conform to the agreement or contract, did not work perfectly, and within the time the defendant informed and notified the American Copper, Brass & Iron Works of such disapproval and rejection, and directed it to take away and remove the same from the defendant's premises.

Upon the trial of the action, and on December 17, 1906, the plaintiff, by leave of the court, filed an amended complaint verified December 12, 1906, by changing it from a complaint upon express contract to one on *quantum meruit,* and annexed the written contract thereto as a part thereof, which declares that all the things therein mentioned should be so furnished all complete for the sum of $2,500 and the Baudelot cooler mentioned, and contained these agreements:

"It is further agreed and understood that this cooling apparatus shall do its work perfectly. A hop-straining and

aerating apparatus shall also be furnished in connection with the same, all included in the purchase price. This cooling apparatus is sold on sixty days' trial. Should the same fail to do its work properly, the same shall be removed at the expense of the manufacturer."

. Such amended complaint alleges that said cooling apparatus was reasonably worth $1,600, and that all the rest and residue of the apparatus, goods described in the contract, and the work necessarily performed under the contract at the defendant's instance and request were reasonably worth $1,375, and alleged a reasonable value of the respective parts thereof. The defendant's objection to the allowance of such amendment being overruled by the court, to which the defendant excepted, thereupon the trial court stated that "the original answer to the original complaint may be permitted to stand, and, in addition thereto, the defendant alleges as follows, as and for a further defense to the action: That the cause of action set forth in the plaintiff's amended complaint accrued, if at all, more than six years prior to the commencement of this action, and is barred by subd. 3, sec. 4222, Stats. (1898)."

At the close of the trial of the issues made by such amended complaint and the original answer as so amended, the jury returned a special verdict to the effect (1) that the last date of performance of the so-called extra work and labor was March 24, 1898; (2) that the reasonable value of the so-called extra work and labor at such date was $98; (3) that it was understood that the so-called extra work and labor was to be included in the original contract between the parties; (4) that the defendant accepted the so-called hop-jack and accompanying appliances; (5) that the defendant on or about April 1, 1898, notified the American Copper, Brass & Iron Works to remove the hop-jack and accompanying appliances; (6) that the reasonable value of the hop-jack and accompanying appliances on December 1, 1897, was $1,278. Upon such verdict, and pursuant to the order

of the court, judgment was entered in favor of the plaintiff and against the defendant for $1,278, and interest thereon from December 17, 1906. From the judgment so entered the defendant appeals.

For the appellant there was a brief by *Friedrich, Teall & Hackbarth,* and oral argument by *F. A. Teall.*

*Adolph Huebschmann,* for the respondent.

CASSODAY, C. J.    The cause of action alleged in the original complaint was based upon an express written contract, which was therein alleged to have been fully performed on the part of the American Copper, Brass & Iron Works on or before April 1, 1898. The action was not commenced until nearly six years after such alleged performance, and the amendment was not made until nearly three years after the action was commenced, or nearly nine years after the alleged cause of action upon the written contract had so accrued. The complaint, as amended, alleges the making of the written contract and annexes a copy of it, but fails to allege performance, and seeks to recover on *quantum meruit* without performance or any claim of performance of the written contract. Was such amendment properly allowed? Under our statutes the power of the trial court to allow amendments to pleadings and proceedings is very broad, and this court has frequently sanctioned its liberal exercise. See secs. 2669, 2670, 2829, 2831, Stats. (1898). As claimed by counsel for the plaintiff, it has been held that a complaint for services on *quantum meruit* could be changed by amendment on the trial to a cause of action on express contract. *Pellage v. Pellage,* 32 Wis. 136. So it has been held that an action on express contract could be changed by amendment to an action for money had and received. *N. W. U. P. Co. v. Shaw,* 37 Wis. 655; *Wells v. Am. Exp. Co.* 49 Wis. 224, 5 N. W. 333; *McHenry v. Grant,* 84 Wis. 311, 54 N. W. 626. See, also, *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55.

But this court also held at an early day that "where an action has been brought for damages for the wrongful erection and maintenance of a milldam, and also for an injunction against the further maintenance of such dam, the plaintiff should not be allowed at the trial to amend his complaint, so as to make it conform to the provisions of the milldam law, and proceed for the recovery of compensation under that law." *Newton v. Allis,* 12 Wis. 378. Soon after it was held that "an amendment should not be allowed, either at or before trial, which entirely changes the cause of action sued upon." *Stevens v. Brooks,* 23 Wis. 196. So in a recent case, where an action was brought for injury to land caused by fires set by a locomotive of the defendant, it was held to be "an abuse of discretion to allow the complaint to be amended by inserting a claim for injury by the same fire to other land a mile distant, where the application was not made until nearly three years after the action was commenced and nearly nine years after the fire, and said claim, as an independent cause of action, was long since barred by the statute of limitations." *O'Connor v. C. & N. W. R. Co.* 92 Wis. 612, 66 N. W. 795. For other cases see *Carmichael v. Argard,* 52 Wis. 607, 609, 9 N. W. 470; *Post v. Campbell,* 110 Wis. 378, 382, 85 N. W. 1032; *Charmley v. Charmley,* 125 Wis. 297, 302, 103 N. W. 1106. As indicated in the foregoing statement, the defendant not only objected to such amendment being made, but immediately upon its being made answered the same by alleging, in effect, that the cause of action therein set forth "accrued, if at all, more than six years prior to the commencement of this action, and is barred by" the third subdivision of sec. 4222, Stats. (1898). The amendment in question would undoubtedly have been permissible had it been made before the statutes of limitation had run upon the new cause of action. When an amendment changing the cause of action is permissible and when not is pointed out in several of the cases cited.

The important question presented is whether the cause of action on *quantum meruit,* first introduced by way of amending the complaint upon the trial, related back to the commencement of the action upon express contract. The law deducible from the adjudications on the subject is aptly summarized in a late federal case, to the effect that an amendment "which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies although the two causes of action arise out of the same transaction, and, by the practice of the state, a plaintiff is only required in his pleading to state the facts which constitute his cause of action." *Whalen v. Gordon,* 95 Fed. 305, 308, 309, 313. It is there said:

"There are three established tests that are always useful to determine the identity of two causes of action: Will the same evidence support both? Will the same measure of damages govern both? And will a judgment against one bar the other? Causes of action may differ, concerning which some of these questions may be answered in the affirmative. But it can be safely said that no two causes of action can be identical concerning which all these questions must be answered in the negative."

Among the numerous adjudications cited in support of the propositions quoted are *Newton v. Allis,* 12 Wis. 278, and two cases from the supreme court of the United States, quite analogous in principle to the case at bar. *Tex. & Pac. R. Co. v. Cox,* 145 U. S. 593, 603, 12 Sup. Ct. 905; *Union Pac. R.*

*Co. v. Wyler,* 158 U. S. 285, 15 Sup. Ct. 877. This last case was an action by an employee of a railroad company against the company for personal injury, based upon the general law of master and servant. It was sought by amendment to change the nature of the claim and base it upon a statute of Kansas, and such amendment was held to be a departure in pleading, setting up a new cause of action, which could not be regarded as commenced until the amendment was incorporated into the pleading; and hence that the action was barred by the statute of limitation. So in the case at bar we must hold that the cause of action on *quantum meruit* was separate and independent from the cause of action on express contract, and that no action was commenced on *quantum meruit* until the filing of the amended complaint, at which time that cause of action was barred by the statute of limitation. It follows from what has been said that the complaint was improperly amended, and the motions for a nonsuit and for the direction of a verdict in favor of the defendant were improperly denied.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the action.

