KICKAPOO DEVELOPMENT CORPORATION, Appellant, vs. KICKAPOO ORCHARD COMPANY and another, Respondents.

*March 8—June 6, 1939.*

466

For the appellant there were briefs by *Mark A. Kline* of Milwaukee and *Rogers & Rogers* of Fort Atkinson, and oral argument by *Mr. Kline*.

For the respondents there were briefs by *Richmond, Jackman, Wilkie & Toebaas* and *Robert N. Nelson,* and oral argument by *Mr. Harold M. Wilkie, Mr. W. E. Torkelson,* and *Mr. Nelson,* all of Madison.

The following opinion was filed April 11, 1939:

WICKHEM, J.  As will be seen from the statement of facts, this case has had a somewhat complicated procedural history.  It may be well at the outset to bear in mind that

there is no appeal here from the interlocutory judgment and no bill of exceptions. Hence, we are not concerned with the questions, (1) whether the findings support a judgment for profits made by defendants through the use of labels simulating those of plaintiff, or (2), whether the findings are supported by the evidence. The first question here relates to the finality of the interlocutory judgment and is raised by the contention that while the time to appeal the interlocutory judgment had passed, the whole matter was fully within the control of the trial court until entry of the final judgment. This contention cannot be sustained. Sec. 270.54, Stats., provides in part:

"In case of a finding or decision substantially disposing of the merits, but leaving an account to be taken, . . . in order fully to determine the rights of the parties, an interlocutory judgment may be made, disposing of all issues covered by the finding or decision, and reserving further questions until the report, verdict or subsequent finding."

Sec. 274.09 (1), Stats., provides, so far as material here:

"Appeals may be taken from interlocutory judgments."

In *Richter v. Standard Mfg. Co.* 224 Wis. 121, 271 N. W. 14, 271 N. W. 914, this court held that, being appealable, an interlocutory judgment must be appealed from just as any other judgment, and that if appeal is not taken within the time limited it cannot be reviewed upon appeal from the final judgment. It was also held that the party aggrieved by an interlocutory judgment cannot, by moving to modify or to set it aside, after the time for appeal has expired, indirectly make reviewable the merits of an interlocutory judgment. If the interlocutory judgment is beyond review by this court upon appeal from the final judgment, and if motions to vacate or set it aside are ineffective to give this court jurisdiction to review, the interlocutory judgment is likewise beyond reach of the trial court after the expiration of the time for appeal and the other periods of time specified by the statute

within which relief may be had from a judgment. Further than this, it is evident from the statutes above quoted that the legislative purpose was not to authorize a mere tentative or proposed judgment, but one which would finally dispose of a portion of the controversy.

Defendants cite in support of their position the case of *Security State Bank v. Monona Golf Club,* 213 Wis. 581, 582, 252 N. W. 287. That was an action to foreclose a land contract and the court in its judgment provided that defendant might have until March 1, 1934, to redeem "unless prior thereto such period is extended by this court on such terms as the court may impose." It was held that this clause made the judgment interlocutory to the extent of the reservation and would warrant the court even though after the term in making such modification as was authorized by the clause. This case is not in point. What the court held was that those portions of the judgment to which the court denied finality would be within its jurisdiction to modify even after the term. The case does not hold that an interlocutory judgment is not final as to those matters in it which are finally disposed of.

The next question is whether the trial court erred in holding that it had power to construe its findings and judgment, and that properly construed the findings did not authorize nor the judgment adjudicate that plaintiff was entitled to an accounting for profits. Upon this point defendants rely upon *Milwaukee E. C. Mfg. Corp. v. Feil Mfg. Co.* 201 Wis. 494, 496, 497, 230 N. W. 607, where it is held that a trial court has inherent power to correct its records to conform to the facts and that such a correction may be made upon the knowledge and recollection of the court if the application is made within so short a time after the judgment is entered that the terms of the one actually pronounced will be fresh in the minds of both counsel and court. That case involved a temporary injunctional order after which plaintiff defaulted and

made no effort to prove the allegations of its complaint. The final judgment provided that any damages sustained by reason of the issuance of the injunction might be determined by the court upon application. After appeal to this court had been taken, but while the record still remained in the circuit court, plaintiff moved to have that portion of the judgment stricken. The circuit court denied this for want of jurisdiction, stating, however, that the court "had not in fact decided whether any liability exists against plaintiff by reason of the issuance of said injunction." This court held that the trial court would have power to enter the order, but stated that the power "is confined strictly to making such corrections as will cause the written evidence of the decree to conform to the judgment in fact rendered by the court. By the exercise of this power the court may not modify or change the judgment so as to make it conform to the decree that ought to have been entered." See also *Packard v. Kinzie Avenue Heights Co.* 105 Wis. 323, 81 N. W. 488.

This case does not sustain defendants' position nor is it in point upon the facts here involved. The trial court here did not correct either findings or judgment to conform to the judgment actually rendered by it. What it did do was to construe the findings and the judgment and to hold that properly construed they do not find intentional fraud and do not adjudicate that plaintiff is entitled to an accounting for profits. So we are not here dealing with a correction of the record to conform to the intended judgment of the court. We are dealing with the question whether the trial court properly construed the interlocutory judgment. The trial court's jurisdiction to construe the interlocutory judgment is not questioned. In this connection it should be said that the trial court no longer had the jurisdiction to determine whether the interlocutory judgment was supported by the findings. If it was not, that was an error of law which was beyond the reach of the trial court. However, assuming the jurisdic-

tion, we are of the opinion that the trial court erroneously construed the findings. It was of the opinion that the deletions heretofore referred to which, generally speaking, strike out the words "fraud" or "intentional fraud" wherever they occur, took from the finding the fact basis essential to a recovery of profits by plaintiff. We cannot assent to this conclusion. The court had found the following facts: (1) That defendants and plaintiff were proprietors of neighboring orchards; (2) that until recently plaintiff had marketed defendants' apples as well as its own; (3) that recently defendants had adopted a label for their apples which is so nearly an exact duplication of plaintiff's that it "requires an effort at recollection to say which is which;" (5) that defendants adopted this label "at the suggestion and request of a certain large Chicago buyer of apples that the defendants adopt a said label like the plaintiff's label so that buyers and customers would believe that they were buying genuine Kickapoo apples when they bought defendants' apples;" (6) that the acts of defendants "are calculated to deceive and confuse the public and buyers of said apples into purchasing the apples of said defendants as and for the apples of the plaintiff." These findings are sufficient to warrant an accounting for profits. It is contended by defendants that in unfair-competition cases accounting for profits may only be had when intentional fraud is discovered. We are of the opinion that intentional fraud as applied to cases of unfair competition consists in the fact that defendants deliberately and intentionally simulated plaintiff's product in a manner calculated to deceive the general public. The conclusion that this is what defendants did is inescapable from the findings. Their previous relations with the plaintiff, and the fact that they were proprietors of neighboring orchards together with the fact that they adopted imitative labels at the suggestion of a buyer that they deliberately simulate plaintiff's labels for the purpose of promoting sales leave no possibility of holding that this is a case of technical or constructive fraud. The findings

are sufficient under any of the cases to warrant an accounting for profits in the absence of other factors impairing the right to an accounting, none of which are present here. See Nims, Unfair Competition and Trade Marks (3d ed.), p. 424.

Defendants rely upon the case of *Straus v. Notaseme Co.* 240 U. S. 179, 180, 36 Sup. Ct. 288, 60 L. Ed. 590. In the *Straus Case* plaintiff brought action for infringement of an alleged trade-mark and for unfair competition. At the original hearing in the circuit court plaintiff's right to a trademark was denied and it was also held that unfair competition was not proven. The circuit court of appeals reversed this decision upon the ground that the label used by defendants so resembled the plaintiff's that deception of the public would naturally result. Plaintiff was allowed to recover profits from a reasonable time after defendants had notice of the similarity of the two designs. The supreme court reversed the decree so far as it permitted recovery of profits. It was pointed out by the court that the defendants "never had seen or heard of the plaintiff, its label or its goods until November, 1909, when they were notified by the plaintiff that they were infringing its registered trade-mark. They ultimately stood upon their rights." The court was of the view that "defendants' persistence in their use of the design after notice proves little or nothing against them. . . . The natural interpretation is not that they wanted to steal the plaintiff's good will of which they then learned for the first time, but that they wished to preserve their own." The foregoing is enough to indicate the plain distinction between the *Straus Case* and the case made out by the findings of fact here. The findings indicate that defendants knew from the start that they were imitating plaintiff's label and that they did it to make their goods appear to be those of the plaintiff and to get whatever sales advantages would accrue to them from the appearance. This is far different from a case where by accident or the mere "poverty of the designer's invention" a similarity arises without any knowledge on the part of the person whose label

or design is junior in time of adoption. We leave out of consideration entirely the announced intention to persist in the use of the labels and assume that what was said in the *Straus Case* renders this fact innocuous or at least inconclusive.

It seems to us that the findings clearly bring the case within the rule of *Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.* 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, which lays down the rule in cases where there has been an intentional simulation of a trade-mark or label that the profits gained through the sale of goods under this simulated label may be recovered in the absence of some circumstance not involved here.

We hold that in the instant case the trial court changed neither the findings nor judgment, and that it had no jurisdiction to do so; that the findings entitle plaintiff to an accounting for profits; and that the interlocutory judgment adjudicates plaintiff's right to such an accounting, reserving only jurisdiction to review the referee's report and to deny judgment for profits if upon the record properly before the court there were none in fact. It is our conclusion that neither the findings nor the judgment are open to the construction subsequently placed upon them by the trial court. It follows that the effect of the final judgment was to modify the final aspects of an interlocutory judgment. This was beyond the court's jurisdiction, and we hold that the interlocutory judgment was not only not subject to such modification but that assuming, as we must in the absence of a bill of exceptions, that its findings were based upon the evidence, the interlocutory judgment was correctly entered and was supported by them. It follows that in so far as it denies plaintiff an accounting for profits the final judgment must be reversed. This is also true of the order declining to confirm the report of the referee. Since, however, this order was solely based upon the conclusion of the trial court that as a

matter of law plaintiff was not entitled to an accounting for profits, and since the merits of the referee's determination have not been passed upon, the reversal should be without prejudice to a hearing upon the merits of the motions to confirm or to set aside the referee's report.

*By the Court.*—The judgment appealed from and the order setting aside the report of the referee are reversed, and cause remanded with directions for further proceedings in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on June 6, 1939.