Ronald V. WUSSOW, Plaintiff-Respondent-Petitioner,

v.

COMMERCIAL MECHANISMS, INC., and Advance Machine Company, Defendants-Appellants.†

Supreme Court

*No. 77–726. Argued January 7, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 897.)

† Motion for reconsideration denied, with costs, on August 11, 1980. ABRAHAMSON and STEINMETZ, JJ., took no part.

For the appellants the cause was submitted on the joint brief of *John Bosshard* and *Bossard, Sundet & Associates* of La Crosse; and *Peter S. Hendrixson, Darron C. Knutson* and *Dorsey, Windhorst, Hannaford, Whitney & Halladay* of Minneapolis, Minnesota.

For the respondent there were briefs by *Robert D. Johns, Jr.*, and *Johns, Flaherty & Gillette, S.C.*, of La Crosse, and oral argument by *Robert D. Johns, Jr.*

HEFFERNAN, J. This review poses the principal question of whether, in a products liability case, the matter may proceed to trial on the question of punitive damages after compensatory damages have been settled and the claims for those damages dismissed. We conclude, under the facts of this case, that the trial for punitive damages was appropriate despite the prior settlement of the compensatory damages.

The defendants claim that the amendment of the complaint to assert punitive damages came too late to avoid the bar of the statute of limitations. We conclude that the limitations did not operate to bar the claim because the newly asserted remedy, punitive damages, related back to the original cause of action arising out of the injuries sustained on July 3, 1972. The newly asserted claim for punitive damages was ". . . connected with the subject of the action upon which the original pleading [was] based." Sec. 269.44, Stats. 1973.

Additionally, the defendants also claim that the evidence was not sufficient to award punitive damages against either Commercial Mechanisms, Inc., or Advance Machine Company. We conclude that the evidence was sufficient to sustain the jury award, that the trial court did not commit error in the admission of evidence, and that a new trial is not justified.

We reverse the court of appeals and affirm the judgments of the circuit court.

The action arises out of an injury sustained by fourteen-year-old Ronald Wussow on July 3, 1972. Wussow, while playing in a public park in the Village of Bangor, Wisconsin, entered an unlocked tool and equipment shed, where he saw an "OLY" pitching machine owned and used by the school district as a training aid for its baseball teams. The machine was equipped with an unguarded pitching arm used for throwing baseballs for batting practice. Although the electric machine was not

plugged in at the time of the accident, it was left in a cocked or energized position. When Wussow bumped one of the pulley wheels, the pitching arm struck him on the head. It struck with such force that the pitching arm crushed Wussow's skull and impinged upon his brain. The pitching arm "stuck" in Wussow's head. Needless to say, he sustained severe personal injuries.

The pitching machine was manufactured by Commercial Mechanisms, Inc. (CMI) and was sold to Athlone Industries, Inc. (Dudley Sports Co. Division), which in turn sold the machine to the Bangor Area School District on or about June 1, 1970. About a year after the sale to the school district, but a year before Wussow was injured, Advance Machine Co. (Advance) acquired CMI by purchasing the assets of CMI's sole stockholder.

On September 23, 1974, Wussow and his parents commenced suit against the village, the school district, and the Dudley division of Athlone. The complaint against the municipalities and their employees alleged negligence in failing to lock the shed and to warn of the dangerousness of the machine. In respect to Dudley, it was alleged that the pitching machine was negligently designed and manufactured and that there was inadequate warning of its dangers. Damages were sought in the sum of $840,000.

Subsequently, in 1975, the complaint was amended by dropping Dudley as a party and adding Athlone and its insurer and the insurers of the village and of the school district. It was alleged that the pitching machine was unreasonably dangerous and defective. Again, only compensatory damages were sought.

In April 1975, a second amended complaint added CMI, Advance, and their insurers as parties.

On June 16, 1976, almost four years after Wussow's injury, a third amended complaint was filed, which included for the first time a demand for punitive damages of $1,000,000 against CMI, Advance, and Athlone.

Four days later, the defendants answered the third amended complaint, denying its allegations and alleging contributory negligence. They also asserted that the portion of the complaint asking for punitive damages failed to state a claim upon which relief could be granted. About a month later, CMI and Advance amended their answers, asserting that the plaintiff's claim for punitive damages was barred by the three year statute of limitations. Sec. 893.205(1), Stats. Defendants asserted that the punitive damages demand in the third amended complaint was the assertion of a new cause of action and, therefore, as a matter of law there could be no relation back to the original complaint to circumvent the bar of the statute of limitations. Nothing in the record indicates that the defendants asserted that there was any unfairness, prejudice, or lack of notice as the result of the belated assertion of punitive damages. Rather, they rested upon the defense that there can be no relation back where a new cause of action is asserted. The trial court held that the amendment related back to the original complaint and overruled the statute of limitations defense. Defendants do not contend that the court abused its discretion by so deciding—they take the position that the ruling was erroneous as a matter of law.

For reasons not explained in the record, the claim for compensatory damages was settled on June 30, 1977. An order was entered pursuant to stipulation dismissing "all of the Plaintiffs' causes of action, excepting only the Plaintiffs' cause of action for punitive damages against Commercial Mechanisms, Inc. and Advance Machinery Company." Defendants' counsel acknowledge that compensatory damages for actual injuries were paid Wussow as the result of this stipulation.

After this settlement, defendants moved to dismiss the punitive damages claim because of the running of the statute of limitations (sec. 893.205(1), Stats.) and

because the complaint failed to state a claim upon which relief could be granted. These motions were denied by the court, and the remainder of the case was scheduled for trial. At a pre-trial conference, plaintiff suggested bifurcating the trial on the remaining issues. Plaintiff offered to prove negligence and that the pitching machine was dangerously defective in a proceeding separated from the portion of the trial intended to provide a basis for punitive damages. The defendants did not agree to that proposal.

Wussow's parents were dismissed as plaintiffs upon the court's conclusion that only a person sustaining physical injury can assert a claim for punitive damages. That ruling is not contested.

The jury returned a verdict finding that the pitching machine was defective in design and unreasonably dangerous, that the village and the school district were negligent, and that the defect in the machine and the negligence of the municipalities were causes of Wussow's injuries. It also found Wussow contributorily negligent and apportioned the negligence in the following manner: The pitching machine 70 percent, the village 10 percent, the school district 10 percent, and Wussow 10 percent.

In answer to a separate question, the court, without objection insofar as the record reveals, found that Ronald Wussow sustained actual damages.

The jury assessed punitive damages against CMI for $50,000 and against Advance for $20,000.

After the court's order denying defendants' motions after verdict, judgments were entered on the verdict on December 29, 1977. An appeal followed.

The defendants' appeal was disposed of by the court of appeals on a single issue. That court reversed the trial court, concluding that, because "plaintiff had no cause of action for compensatory damages at the time of trial against CMI or Advance, he may not be awarded

punitive damages against those defendants." 90 Wis.2d 136, 141, 279 N.W.2d 503 (Ct. App., 1979). Were this opinion supportable, it would resolve the entire dispute. We conclude, however, that, on the facts of this case, the court of appeals was in error. Before discussing the correctness of the court of appeals' rationale, it must first be determined whether the interposition of the claim for punitive damages came too late to avoid the bar of sec. 893.205, Stats.[1] If the claim for punitive damages relates back to the original filing—and thus avoids of the court of appeals' rationale.

Determining whether the demand for punitive damages relates back to the original filing—and thus avoids the bar of the statute of limitations—basically involves defining what is a cause of action. The defendants' argument is premised on the assumption that each separate demand arising out of a single injurious occurrence constitutes a separate cause of action. This is incorrect.

As all the parties agree, the statute in respect to relation back of amendments applicable to this case is sec. 269.44, Stats. (1973). Wussow's action was commenced on September 23, 1974, for injuries that were sustained on July 3, 1972. The third amended complaint, alleging punitive damages, was filed on June 16, 1976, almost four years after the accident. Clearly, had the third amended complaint been the initial filing, the action would be barred by the statute of limitations. The defendants concede that, were the revised statute, sec. 802.09(3) Stats. 1975, applicable to this case, the doctrine of relation back would probably operate. We con-

[1] Fundamental to the defendants' original position is the assertion that punitive damages may not be claimed in a products liability case. This question is resolved against the defendants in *Wangen et al. v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437 (of even date herewith). Therein we hold, "punitive damages are recoverable in a product liability suit if there is proof that the defendant's conduct was 'outrageous.'" (p. 271.)

clude that the 1973 statute permits, with at least equal clarity, the relation back of the amendment to the original pleadings. Sec. 269.44, Stats. 1973, provides:

"269.44 **Amendments of processes, pleadings and proceedings.** The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

This statute clearly gives legislative imprimatur to permit the amendment made here. Under the statute, an amendment may be offered even after judgment so long as the "amended pleading . . . is connected with the subject of the action upon which the original pleading is based." There can be no doubt that the amendment satisfied this statutory requirement. The statute also makes it permissible to amend the pleading to completely change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa . . . ." The statute makes clear that all that is required is that the amended pleading state a cause of action arising out of the "transaction" or "occurrence." Hence, if those circumstances are satisfied, an entirely different theory of relief arising out of the same transaction or occurrence may be introduced by amendment and it will relate back to the original filing.

In the instant case, all that is sought is the modification of the remedy. It is clearly illogical to assert that an amendment may not modify the remedy sought when, under the statute, the denomination of the cause of ac-

tion and the theory on which it was brought can be completely altered. It could hardly be clearer that the legislature has permitted this type of amendment and by express language has allowed the amendment to have the same effect in respect to the statute of limitations as the original complaint.

As long as the amendment arises out of the same transaction, a judge may permit the amendment if "in furtherance of justice and upon such terms as may be just." The statute thus leaves to the discretion of the trial court the determination whether an amendment will be permitted. *Drehmel v. Radandt*, 75 Wis.2d 223, 249 N.W.2d 274 (1977).

In the instant case the trial court considered all the arguments of the parties and in an appropriate exercise of its lawful discretion permitted the amendment. Unless we can find that the trial court abused its discretion, we are powerless to set aside that determination. There is no claim in the defendants' briefs that the trial court abused its discretion. Rather, the assertion of trial court error is based on what the defendants perceive to be an error of law—the application of the relation back statute.

The defendants contend that the trial court abused its discretion as a matter of law when it permitted amendment by adding what the defendants consider to be a different cause of action. This characterization of the nature of the amendment is incorrect. The statute expresses what has been explicit in the law since the adoption of the Field Code—a cause of action is not circumscribed by the legal theory asserted or by the remedy sought. Rather, a cause of action owes its existence to a set of operative facts. This was explained and restated in *Caygill v. Ipsen*, 27 Wis.2d 578, 135 N.W.2d

284 (1965). In that case we pointed out that the remedy or relief sought should not be confused with the concept of cause of action. Whether compensatory damages, special damages, or punitive damages are sought as a matter of remedy or relief is immaterial to the cause of action itself. In *Caygill,* we cited with approval the definition of a cause of action given by Charles E. Clark in his treatise, *Code Pleading* (2d ed.), p. 130. Clark defined a cause of action as:

" '. . . a group of facts, but limited as a lay onlooker would to a single occurrence or affair, without particular reference to the *resulting legal right or rights.*' " (Emphasis supplied.) *Caygill* at 582.

Hence, it is the operative facts that determine the unit to be denominated as the cause of action, not the remedy or type of damage sought. To the extent the defendants rest their defense on the assumption that a claim for punitive damages states a different cause of action than a claim for compensatory damages based on the same facts or connected with the subject of the action upon which the original pleading is based, they are in error. All that is required after the amendment is that a cause of action arising out of the same occurrence, operative facts, or contract continue to be stated. As the trial judge well understood, this requirement was without doubt fully adhered to by the plaintiff.

Reference should be made to the inapplicable doctrine of *Meinshausen v. A. Gettelman Brewing Co.,* 133 Wis. 95, 113 N.W. 408 (1907), upon which the defendants rely. In *Drehmel, supra,* we pointed out that *Meinshausen* was no longer good law. Although it is a case that has frequently been relied upon by counsel in relation back cases—and regrettably on occasions by this court—*Meinshausen* has been inapplicable since 1911, when the statute on which *Meinshausen* was based was

amended. *See,* ch. 353, Laws of 1911. *Meinshausen* stated at 102:

". . . an amendment 'which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point.' But an amendment which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute . . . ."

*Meinshausen* was based upon the language of sec. 2830, Stats. (1898), which provided for relation back "when the amendment does not change substantially the claim . . . ." Unfortunately, the language of *Meinshausen* based on the 1898 statute has been carried forward into the law by our decisions subsequent to the amendment of 1911. The inapplicability of the *Meinhausen* rationale to cases subsequent to the amendment is discussed in Conway, *Wisconsin and Federal Civil Procedure* (1966 ed.). Professor Conway states at 26–45:

"Wisconsin has restricted the amendment statute by reading into it a no-relation-back rule based on Meinshausen v. A. Gettelman Brewing Co. This case was decided in 1907 when the amendment statute had a different form than the present, viz., 'when the amendment does not change substantially the claim or defense.' This clause was stricken in 1935, but the court continues to cite the case and the general rule on relation-back, without regard to the fact that the present statute does not require 'substantially the same claim' to be stated. Accordingly, there is no reason why the relation-back rule should still be related to the same cause of action instead of to the underlying transaction, occurrence, contract, or res."[2]

[2] The reference by Conway is apparently to supreme court Rule 269.44, effective in 1936, which restated the statutory change of 1911. The relationship between the 1911 statutory amendment and

It is apparent, therefore, that decisions of this court subsequent to 1911 which relied upon *Meinshausen* and the 1898 statute are based upon a statutory foundation that has ceased to exist. Accordingly, *Meinshausen* and its progeny cannot be considered authority for the defendants' position that no new claim or demand can be made in an amendment to an existing cause of action. We believe the correct rule to be that stated in *Drehmel*, *supra* at 229, that it is "within the discretion of the trial court to refuse to permit [or permit] the amendment" when it arises out of the same underlying transaction, occurrence, contract, or res.[3]

All of the statutes dealing with the relation back of amendments have emphasized the exercise of trial court discretion. The 1898 statute provides that the amendment may be permitted "in furtherance of justice and upon such terms as may be just." Sec. 269.44, Stats. (1973), utilizes the identical language. Under the statute now in effect, leave to amend shall be freely given at any stage of the action when justice so requires. Sec. 802.09(1). Hence, a pleading may be amended at any time if it satisfies the statute and if, in the discretion of the trial court, the amendment does not come at a time when it is likely to cause unfairness, prejudice, or injustice. In the instant case, the only attack made upon the amendment was whether, as a matter of law, the amendment was permissible. It is clear that it was, and the trial court's exercise of discretion in respect to the "justice" of the amendment has not been challenged.

the rule change of 1936 is made clear by Professor Conway in *Survey of Wisconsin Pleading 1947–1954,* 1955 Wis. Law Rev. 348, 353.

[3] It should be pointed out that the post-*Drehmel* decision, *Achtor v. Pewaukee Lake Sanitary Dist.,* 88 Wis.2d 658, 277 N.W.2d 778 (1979), dealt only with an amendment that tardily sought to join unknown and unnamed persons as parties plaintiff.

Accordingly, the question of punitive damages as an additional remedy for the cause of action originally asserted was appropriately before the trial court. It was not barred by the statute of limitations.

We also conclude that the court of appeals' misconception of a cause of action erroneously impelled it to reverse the trial court. The court of appeals stated that, because the "plaintiff had no cause of action for compensatory damages at the time of trial against CMI or Advance, he may not be awarded punitive damages against those defendants." (at 141) This statement by the court of appeals implies that the damages sought, in themselves, constitute a cause of action. We believe that the court of appeals confused "cause of action" with "remedy." As McCormick, *Damages* (hornbook series, 1935), sec. 1, p. 2, points out, "cause of action" is concerned with "whether the claim is enforceable at all." This is a question different from the determination of what remedy is afforded. The usual dichotomy is equitable relief as opposed to a judgment for money damages. "[A] judgment for money damages is the normal and preferred *remedy* in our courts." (Emphasis supplied.) McCormick, *supra*, sec. 1, p. 1.

Compensatory, special, and punitive damages are all subsumed under the general category of the branch of remedies denominated as damages. The question of damages, how they should be measured, and for what purpose they should be awarded is jurisprudential light years away from determining what is a cause of action. Yet the court of appeals treated the dismissal of the claim for compensatory damages as equivalent to a dismissal of the cause of action. The fact that there was a settlement and payment of the claim for compensatory damages in no way affected the continued existence of

the cause of action based on operative facts which could give rise to multiple or alternative remedies.

The court of appeals, without stating a rationale, relied on the questionable precedent of *Widemshek v. Fale,* 17 Wis.2d 337, 342, 117 N.W.2d 275 (1962). *Widemshek* did not address the question of whether, where there is a preexisting cause of action, the remedy of punitive damages can be asserted after the granting of a partial remedy by settlement of compenstory damages. *Widemshek* held that, where no actual damage was "sustained" (p. 343) or "suffered" (p. 340), there is no cause of action whatsoever. This has nothing to do with punitive damages. Moreover, the two cases relied upon in *Widemshek—Hahn v. Petters,* 189 Wis. 145, 207 N.W. 291 (1926), and *Stephens v. Wheeler,* 193 Wis. 164, 213 N.W. 464 (1927)—offer no support for the court of appeals' erroneous conclusion in this case that the partial settlement of a cause of action by payment of compensatory damages extinguishes any additional remedy for the cause of action that would otherwise exist. The cases cited in *Widemshek* merely recite boilerplate law that, without damage or injury, culpable conduct does not give rise to a cause of action. While that statement is undoubtedly true, it is irrelevant in the context of this case, given Wussow's undisputed injury. Nor is the passing reference to Prosser, *Law of Torts,* fully supportive of the proposition for which it is cited in *Widemshek.* The more recent edition, Prosser, *Law of Torts* (hornbook series, 3d ed., 1964), sec. 2, p. 14, merely recites that, where punitive damages are awarded, they must bear some relationship to compensatory damages. This has no relevance to the question in this case. Moreover, Prosser indicates a preference for the total repudiation of that proposition.

As the plaintiff points out in his brief, substantial liberty must be taken with the language of *Widemshek*

to reach the conclusion of the court of appeals. Even were we to give full validity to the unsupported dicta of *Widemshek*, all that it asserts is that, for punitive damages to be awarded, actual damages must be "sustained" or "suffered." Nowhere does *Widemshek* support the assertion of the court of appeals that "the 'cause of action' for punitive damages could not stand unless a cause of action for compensatory damages existed [continued to exist]." 90 Wis.2d at 140. *Widemshek* does not so hold. No Wisconsin precedent supports the court of appeals' assertion.

We need not, however, definitively reach the question of whether or not there could be a remedy of punitive damages where no compensatory damages have been suffered or sustained. This case does not pose those facts, because actual damages were suffered and payment was made. The cause of action continued to exist. All that occurred as a result of the settlement was that one of the plaintiff's claims for relief was satisfied.

It is both rational and consistent with the common law to allow punitive damages in this case, where actual damages were sustained and compensatory payment was made. This is especially true in this case, because the damage claim was dismissed with the defendants' knowledge that punitive damages remained a remedy still to be sought. It cannot be argued that plaintiff abandoned his cause of action by accepting partial compensation, when the record shows that for a *quid pro quo* he compromised one remedy but retained the whole cause of action (the set of operative facts) as evidence of his right to an additional remedy of punitive damages. It could not be reasonably argued that, in a case which showed a need for both equitable relief and damages, the granting of an injunction would bar a plaintiff from additionally seeking damages although all stemmed from a single cause of action. This is the everyday use of an

injunction to prevent further harm, and the same cause of action will support a damage award. They are merely alternative or concomitant remedies. *See, Kickapoo Development Corp. v. Kickapoo Orchard Co.*, 231 Wis. 458, 285 N.W. 354 (1939). It is equally true that the granting of partial damages of one type (compensatory) pursuant to stipulation, does not bar the right to punitive damages when further suit was contemplated by the parties. To hold that the plaintiff is barred from further pursuit of his claim, contrary to the intent for which the remedy of punitive damages was expressly preserved, would be contrary to the accepted law and, in the circumstances, unjust.

Accordingly, we reverse the decision of the court of appeals which held that settlement of the claim for compensatory damages extinguished the entire cause of action.

The jury made a finding of punitive damages against both CMI and Advance. The total punitive damages were $70,000, and the jury apportioned $50,000 to CMI and $20,000 to Advance. Although the defendants initially asserted that, as a matter of law, punitive damages could not be allowed in a products liability action, the record shows no objection to the manner or form in which the punitive damage instructions were submitted to the jury. The jury was instructed that punitive damages could either be awarded or withheld in the discretion of the jury and that punitive damages may not be awarded unless the defendants acted "in a wanton, willful or reckless disregard" of the plaintiff's rights. The principal evidence of such conduct—evidence which in itself was sufficient to support the jury's verdict—came from the testimony of Daniel Arones, an engineer for CMI and Advance.

The record shows that Arones, although primarily an employee of Advance, spent several days each month at

CMI's plant and he was an integral part of both companies' operations. He was an employee of both companies and received compensation from CMI and Advance.

Arones' testimony revealed that both defendants had actual knowledge of the defective nature of the pitching machine prior to the injury to Ronald Wussow. Arones admitted that he and other employees of CMI and Advance were aware of other injuries and other lawsuits prior to July 3, 1972. He also admitted that, although he was aware that there were other injuries, he did not check CMI's safety records upon Advance's acquisition of CMI and he did not urge the installation and manufacture of a safety guard even though he knew that other pitching machines had such guards. His examination also brought out the fact that the safety instructions which were distributed with the machines were misleading and inadequate. Although the testimony made it clear that it would have been prudent to have a formal safety review committee, Arones knew that CMI did not have such a committee.

The jury concluded that the evidence showed willful, wanton, and reckless conduct by the corporate defendants and returned its verdict awarding punitive damages. In reviewing the evidence on motions after verdict, the trial judge discussed the sufficiency of the evidence and stated that the record showed that both CMI and Advance had actual knowledge of the dangerous defect before the date of Wussow's injury. In addition, he recounted that there was proof of injuries occurring prior to Wussow's accident which entailed the same defect and type of injury. After reviewing the evidence, he stated:

"I not only think there was sufficient evidence to find willful and wanton action on the part of the defendants, and reckless disregard of the plaintiff's rights . . . .

"Now gentlemen if you put this whole bundle together in terms of the actions of the defendants in regards to product liability, this in my mind was a flagrant situation. I don't know what the defendants were thinking about, but if there ever was a case where at least in my opinion that there should have been punitive damages, this was it.

". . . I think the court has made its impression very clear and does feel . . . that there is evidence to sustain those awards, and the court is not going to touch them in any way."

While it is clear that the combined conduct of CMI and Advance was outrageous and warranted punitive damages, the defendants pose the additional question of the apportionment of these damages between the two corporate tortfeasors. This problem is complicated by the fact that the machine was sold to the school district in 1970, a year before Advance acquired CMI.

The record shows that, after the acquisition of CMI by Advance in 1971, all the members of the board of directors of CMI were also board members of Advance. The testimony of Arones reveals that, after the acquisition, he had general supervision of the pitching machine business conducted by CMI. Although Arones was a vice president of Advance and had been an employee of Advance since the mid-1930's, he became an employee of CMI, as well as of Advance, following the acquisition.

Contrary to the assertion of the defendants' briefs, Arones was aware of the prior lawsuits against CMI soon after the acquisition. Arones testified that he was told of these lawsuits by Harkley, the previous CMI owner, and by several CMI employees. Also, he admitted that, at about the same time, he became aware of the fact that other pitching machines manufactured by competitors were equipped with a guard to shield nearby persons from the pitching arm. As the result of the dissolution of CMI by Advance in 1975, Advance assumed

the liabilities of CMI. At the time of Wussow's injury, CMI was wholly owned by Advance and the pitching machine operation was under the direct control of Arones, a vice president of Advance. During the year between the acquisition of CMI and Wussow's accident, Arones was aware of the hazards inherent in the design of the pitching machine and yet nothing was done by Advance to insure that prior purchasers of the machine were informed of the hazard. No attempt was made during this period to manufacture or distribute guard devices, even though Arones acknowledged that the design and manufacture of a guard device was a matter of routine engineering skill and required no design pioneering.[4] The responsibility of Advance and its liability to answer in punitive damages is made clear by the record.

CMI's responsibility for punitive damages is amply proved. We consider defense counsels' argument in this respect untenable. The defendants contend that, because CMI was dissolved in 1975 and pitching machines like the "OLY" model are no longer made, no societal purpose would be served by punishing the defunct corporation for having once produced dangerously defective machines. While punitive damages have as one purpose the deterrence of similar future outrageous conduct, they also, as the very name suggests, are intended to punish past conduct. Nothing in defense counsels' argument poses a rational basis for concluding that there should not be "smart money" or punitive damages imposed when

---

[4] Evidence that Advance and CMI, in 1974, designed guard devices and apprised customers of their availability is probative of the fact that nothing was done in this respect, although the problem was known prior to the Wussow accident. It was not proof of a hazard that became known only after 1972. Rather, it was proof of the fact that a hazard known in 1971 did not impel any response until three years later. This is not evidence of a post-accident recognition of a danger previously unknown.

there has been past willful, wanton, or reckless conduct. The dissolution articles made clear that the dissolved corporation's assets remained answerable for past conduct if suit against the corporation was brought within the time limited by the corporate dissolution statute.

Another point raised by the defendants, although not clearly expressed, is that, because Advance and CMI's culpability overlapped between 1971 and 1972 due to the de facto integration of the two corporations, rational allocation of the damages attributable to each was impossible. We are satisfied that the jury's apportionment of $50,000 punitive damages against CMI and $20,000 against Advance was appropriate and reasonable. In view of the flagrant and outrageous character of the conduct of both CMI and Advance, total punitive damages in the amount of $70,000 is modest indeed. Clearly, the conduct of each of the corporations was willful, wanton, and reckless. We decline to set aside the jury's award of punitive damages or its apportionment of the damages between the two defendants.

Additionally, the defendants contend that evidentiary errors so tainted the verdict that a new trial should be ordered. After a careful review of the record, we decline to order a new trial.

Because we conclude that the additional evidentiary errors urged are without merit, we summarize our conclusions.

The testimony of Arones in respect to post-Wussow injuries was relevant and, in any event, it was not objected to. The evidence of a 1977 consent order acknowledging the hazardousness of the pitching machine was objected to and did not reach the jury.

There was no error in the admission of the testimony of Dr. Davis. The alleged stipulation was reached prior to the settlement of the compensatory damages claim.

It became irrelevant when it was determined not to try that issue. In any event, we see no violation of the stipulation. Dr. Davis' testimony proved not permanent medical injury, but temporary disability. All his testimony proved was actual damages—clearly an appropriate issue in the posture of the case as viewed by the parties. In the aggregate of the actual damages proved at the trial, Dr. Davis' testimony had little weight. When that testimony is viewed in conjunction with the evidence not objected to regarding the blow to Wussow's head and the evidence of the implantation of an acrylic plate in his skull, the Davis testimony is minor and not prejudicial.

We conclude that the claim for punitive damages was timely brought, that pursuant to *Wangen v. Ford Motor Company, supra,* punitive damages may be recovered in a products liability case, and that there was evidence sufficient to support the jury verdict assessing punitive damages against CMI and Advance. The errors alleged by defendants do not warrant a new trial.

*By the Court.*—Decision of court of appeals reversed; judgments of circuit court affirmed.

COFFEY, J. (*dissenting*). I have set forth my views on the recovery of punitive damages in products liability actions in my dissent to *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 321, 294 N.W.2d 437 (1980). Therefore, I will not repeat them here. Instead, I will confine my discussion to the statute of limitations question.

It is clear enough that a cause of action for punitive damages is separate from a cause of action for personal injuries, although dependent thereon. The majority analysis of the pleading question in *Wangen* is based on this premise, as I pointed out in my dissent. Even in this case, despite the majority's statements to the contrary,

the result reached by the majority can be supported only on the theory that a punitive damage claim is a separate cause of action. The third amended complaint, filed some 11 months after the three-year limitations period (sec. 893.205, Stats.) had expired, introduced a demand for punitive damages for the first time. Pursuant to the stipulation of settlement, all causes of action were dismissed, "excepting only the Plaintiffs' cause of action for punitive damages. . . ." If punitive damages were only a remedy, they could not have been awarded in this case because the underlying cause of action had been dismissed. This was the theory of the decision of the court of appeals, and it was correct if punitive damages is not a separate cause of action. The majority's decision in this case changes what was a cause of action for compensatory damages alone to one now reciting causes of action for punitive and compensatory damages alike, thus again adding a punitive damage claim as the majority has done this date in *Wangen v. Ford Motor Co.,* *supra*.

The majority disavows *Meinshausen v. A. Gettelman Brewing Co.,* 133 Wis. 95, 113 N.W. 408 (1907), because of ch. 353, Laws of 1911, which provided as follows:

"The court, in its discretion, and on such terms as may be just, may allow a pleading to be amended regardless of whether it will change the nature of the action from one at law to one in equity, or from one on contract to one in tort, or vice versa, provided the pleading, as amended, states a cause of action arising out of the same contract, transaction or is connected with the same subject."

The 1911 Act had no effect on the rule of *Meinshausen,* which is that an amendment to a complaint that sets up a new cause of action (allegation) and makes a new demand cannot relate back to the commencement of the

action, in order to avoid the running of the statute of limitations against the new matter pleaded in the amendment and the trial court thus was without the discretionary authority to allow this amendment. The 1911 Act does no more than to change the application of the *Meinshausen* rule to the facts of the case. In *Meinshausen*, this court applied the rule so as to bar recovery on *quantum meruit* by an amendment when the complaint had alleged an express contract. In *Meinshausen*, if the barred amendment had been allowed by the court, it would have materially changed the action from one at law to one in equity. Therefore, the 1911 Act as applied to the factual situation in *Meinshausen* would have changed the result but not the rule of law in that case. As the majority concedes, this rule of law has been followed in numerous cases.

The 1911 Act has no application to the case at bar. The amendment in question did not change the nature of the action from one at law to one in equity, nor from one in contract to one in tort, or vice versa. This amendment of the complaint in this case set up a new cause of action (allegation), separately stated, and made a new demand, for punitive damages. It is completely outside of, and unaffected by, the 1911 Act. It is squarely within the rule of *Meinshausen*, which the Act did not change.

After the date of decision in *Drehmel v. Radandt*, 75 Wis.2d 223, 249 N.W.2d 274 (1977), the author of the majority opinion in this case wrote the opinion in *Achtor v. Pewaukee Lake Sanitary Dist.*, 88 Wis.2d 658, 277 N.W.2d 778 (1979). In that opinion he stated as follows:

"Prior to the effective date of the new code, amended complaints did not relate back to the time of service of the original summons and complaint for purposes of satisfying statutes of limitations if the amendment changed the cause of action, the party defendant, or the party plaintiff. *Meinshausen v. A. Gettelman Brewing*

*Co.,* 133 Wis. 95, 113 N.W. 408 (1907) ; *Baker v. Tormey,* 209 Wis. 627, 245 N.W. 652 (1932) ; *Heifetz v. Johnson,* 61 Wis.2d 111, 211 N.W.2d 834 (1973) ; *Borde v. Hake,* 44 Wis.2d 22, 170 N.W.2d 768 (1969)." *Id.* at 662.

This case arises under the old code of procedure. Therefore, the rule of *Meinshausen* must control.

The majority says in a footnote that *Achtor* "dealt only with an amendment that tardily sought to join unknown and unnamed persons as parties plaintiff." (*Supra,* 148, n. 3.) However, the author of the majority opinion wrote in *Achtor:*

"Moreover, the addition of the unknown party plaintiffs *purported to add an entirely new cause of action* to the complaint. Hence, the rationale discussed in *Drehmel v. Radandt,* 75 Wis.2d 223, 249 N.W.2d 274 (1977)—which permits, in some circumstances, the addition of parties, even before the date of the new code— *is inapplicable."* (Emphasis supplied.) *Id.* at 662.

Thus, *Drehmel* "is inapplicable" where the amendment "purport[s] to add an entirely new cause of action." That is what happened here. This is not a case in which the plaintiff merely restated his complaint, introducing a substitute theory to support a previously pleaded demand for damages. The third amended complaint, filed almost four years later, added a new cause of action, separately stated, for punitive damages, and retained the previous plea for compensatory damages.

In discussing the question of whether two causes of action were identical, *Meinshausen* quoted from *Whalen v. Gordon,* 95 F. 305 (1899), as follows:

"There are three established tests that are always useful to determine the identity of two causes of action: Will the same evidence support both? Will the same measure of damages govern both? And will a judgment against one bar the other? Causes of action may differ, concerning which some of these questions may be answered in the affirmative. But it can be safely said that

no two causes of action can be identical concerning which all these questions must be answered in the negative." *Meinshausen v. A. Gettelman Brewing Co., supra* at 103.

In this case sound legal reasoning requires that all three questions must be answered in the negative. The same evidence will not support both because evidence of "outrageous conduct" is not material to a cause of action based on strict liability. The same measure of damages obviously does not govern both. Finally, the majority in its holding states that a judgment dismissing a cause of action for compensatory damages does not bar an action for punitive damages.

I would hold that the court's allowance of the fourth complaint (third amended), filed some four years after the accident in 1976, set forth a new cause of action for punitive damages which had not been previously pleaded and thus deprived the defendants of their constitutionally vested right in a proper statute of limitations defense (sec. 893.205(1), Stats.)[1]. *See: Haase v. Sawicki*, 20 Wis.2d 308, 121 N.W.2d 876 (1963). The majority states

---

[1] In *Eingartner v. Illinois Steel Co.*, 103 Wis. 373 (1899), this court stated:

". . . that a right to insist upon the statutory bar is a vested property right protected by the constitution, the effect of which is to forever prevent the judicial enforcement of the demand affected by it, against the will of the owner of the prescriptive right. . . .

"It follows necessarily that when a defense to a right has become vested beyond recall without consent of the person in whose favor it operates, so that his adversary is powerless to enforce such right beyond power of adverse restoration, it is, to all intents and purposes, as effectually satisfied as if paid or otherwise discharged. As the court put it in *Woodman v. Fulton* . . . [(1873), 47 Miss. 682], 'The bar created by the statute of limitations is as effectual as payment or any other defense, and when once vested cannot be taken away even by the legislature.' That is the doctrine of this court expressed in many cases." *Id.* at 376.

that the trial judge did not abuse his discretion in permitting Wussow to amend his complaint and add a claim for punitive damages. I disagree with the majority because the trial court was without discretionary authority to allow the amendment of the complaint and I would hold that the doctrine of relation back cannot be used to circumvent the statute of limitations. *Id.* at 313; *Eingartner v. Illinois Steel Co.*, 103 Wis. 373 (1899). *See also: Pulchinski v. Strnad*, 88 Wis.2d 423, 276 N.W.2d 781 (1979). I would affirm the decision of the court of appeals.

I am authorized to state that Mr. Justice CONNOR T. HANSEN joins in this dissent.